[No. A047342. First Dist., Div. Two. June 15, 1993.]

WARREN COHEN, Plaintiff and Appellant, v.
SUZANNE McINTYRE et al., Defendants and Respondents.

## COUNSEL

Wilson, Alger & Grenlich, Matthew D. Alger and Kent C. Wilson for Plaintiff and Appellant.

York, Buresh, & Kaplan, Gina Dashman Boer and Fred M. Feller for Defendants and Respondents.

## OPINION

**SMITH, J.**—Plaintiff-appellant Warren Cohen, a veterinarian, appeals from a summary judgment[1] in favor of defendant-respondent Suzanne McIntyre and her parents in plaintiff's action for negligence brought as a result of injuries he suffered while treating defendant's dog Lobo. This case is on remand from the California Supreme Court for reconsideration in light of *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] (*Knight*). After reviewing *Knight* and other authorities, we reaffirm our previous ruling that Cohen's recovery is, as a matter of law, barred by the doctrine of assumption of the risk.

### BACKGROUND

With one noted exception (see fn. 2, *post*) we repeat the statement of facts as set forth in our prior opinion:

---

[1]The appeal is purportedly taken from a nonappealable minute order granting defendant's motion for summary judgment. In the interests of justice we will amend the order to incorporate a judgment of dismissal and deem the notice of appeal as applying to that judgment. (See *Kendall* v. *Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 493, fn. 3 [220 Cal.Rptr. 818, 709 P.2d 837].)

Plaintiff Cohen is a veterinarian employed by the County of Contra Costa. In his 16 years of experience, he had been bitten twice before while treating dogs. On March 17, 1988 defendant Suzanne McIntyre brought her dog Lobo to the Contra Costa Veterinary Clinic for a preneutering examination. Lobo had bitten three people in the past two years and defendant wanted him neutered because she thought it would "mellow" him.

After about five minutes, Cohen bent down to pick the dog up off the floor. As soon as he touched Lobo, the dog turned and snapped at the veterinarian's left arm, causing him to withdraw.[2] He gave defendant a muzzle and instructed her that the dog had to be muzzled before he could proceed any further. After several attempts, defendant succeeded in muzzling the dog. Cohen lifted the dog onto the table and performed the preneutering examination. When he was finished, Cohen placed the dog back on the floor and, without seeking assistance from defendant, removed the muzzle from Lobo. As soon as the muzzle was off, the dog turned and bit the doctor several times. At no time did Cohen ask for, nor did defendant volunteer, any information about whether the dog had a propensity to bite.

Cohen filed a form complaint against defendant and her parents[3] with the designation "Personal Injury/Dog Bite" containing one cause of action for negligence. It alleged that defendants failed to warn Cohen of the dog's vicious propensities and exposed him to being bitten. An "Exemplary Damages" attachment alleged that defendant knew of the dog's vicious propensities yet failed to warn and concealed them from Cohen.

The trial court granted summary judgment in favor of defendant, and this court affirmed. The California Supreme Court granted review pending the outcome of its decision in *Knight*. The case has now been retransferred to us for reconsideration in light of that opinion.

## APPEAL

In *Knight*, a three-judge plurality of the state Supreme Court (with a fourth, Justice Mosk, concurring in the result) effectively abolished the

---

[2] Defendant indicated in her deposition that after the dog snapped, Cohen said something like "When were you going to tell me the dog might bite, after he has my arm?" In his supplemental letter brief, Cohen strongly objects to the inclusion of the statement as an uncontradicted fact in our prior decision because: (1) it was presented in the form of a leading question by defendant's attorney; (2) it was first raised before the trial court in defendant's reply brief; and (3) Cohen had no opportunity to file rebuttal evidence. We omit the statement in this summary because it is immaterial to our ultimate conclusion.

[3] While McIntyre's parents were nominal defendants in the suit, Cohen does not assert any error as to the summary judgment granted in their favor. Hence, all further references to "defendant" are to Suzanne McIntyre, the dog's owner.

previous judicial categorization of assumption of the risk into "reasonable" and "unreasonable" forms for purposes of determining whether the doctrine has been subsumed by the comparative negligence principles adopted by the court in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] (*Li*). (See, e.g., *Ordway* v. *Superior Court* (1988) 198 Cal.App.3d 98, 102-105 [243 Cal.Rptr. 536].) After analyzing *Li* and the authorities it cites, *Knight* declared that survival of the doctrine as a defense in any given fact situation should instead turn on the distinction between "primary" and "secondary" assumption of risk. Primary assumption of the risk according to *Knight* refers to "those instances in which the assumption of risk doctrine embodies a legal conclusion that there is 'no duty' on the part of the defendant to protect the plaintiff from a particular risk . . . ." Secondary assumption involves "those instances in which the defendant does owe a duty of care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty . . . ." (*Knight, supra*, 3 Cal.4th 296, 308.)

*Knight* held that "the question whether the defendant owed a legal duty to protect the plaintiff from a particular risk of harm does not turn on the reasonableness or unreasonableness of the plaintiff's conduct, but rather on the nature of the activity or sport in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity or sport." (*Knight, supra*, 3 Cal.4th 296, 309.) In a footnote most significant to the case at bar, the court held that in addition to the sports setting, "the primary assumption of risk doctrine also comes into play in the category of cases often described as involving the 'firefighter's rule.' [Citation.] In its most classic form, the firefighter's rule involves the question whether a person who negligently has started a fire is liable for an injury sustained by a firefighter who is summoned to fight the fire; the rule provides that the person who started the fire is not liable under such circumstances. [Citation.] Although a number of theories have been cited to support this conclusion, the most persuasive explanation is that the party who negligently started the fire had *no legal duty to protect the firefighter from the very danger that the firefighter is employed to confront.*" (*Id.*, fn. 5, at pp. 309-310, italics added.)

After this quote, the court cites not only *Baker* v. *Superior Court* (1982) 129 Cal.App.3d 710 [181 Cal.Rptr. 311], a firefighter's case, but *Nelson* v. *Hall* (1985) 165 Cal.App.3d 709 [211 Cal.Rptr. 668] (*Nelson*). In *Nelson* the rationale of the firefighter's rule was extended to veterinarians and their assistants who are bitten while an animal under their control is receiving care and treatment. There, a veterinary assistant, who was unaware of any vicious propensities of a dog which had been brought in for a minor operation, was bitten without warning while holding the animal on the operating table. (*Id.*,

at p. 712.) In announcing a "veterinarian's rule," the *Nelson* court held that the risk of being attacked or bitten in the course of veterinary treatment is an occupational hazard which veterinarians accept by undertaking their employment and are in the best position to guard against by taking the necessary precautions. "The risk of dog bites during treatment is a specific known hazard endemic to the very occupation in which plaintiff voluntarily engaged." (*Id.*, at p. 714.) In *Willenberg* v. *Superior Court* (1986) 185 Cal.App.3d 185 [229 Cal.Rptr. 625], the court applied the *Nelson* rule to bar a claim by a veterinarian who was attacked by a dog which suddenly leaped off the examination table.

■ Applying the above principles to the case at bar, it is apparent that this case falls within the "primary" category of assumption of the risk referred to in the *Knight* analysis. Cohen, a licensed veterinarian, was injured during the course of treating an animal under his control, an activity for which he was employed and compensated and one in which the risk of being attacked and bitten is well known. ■ ■ ■ Thus, this is a classic situation where a defendant's ordinary duty of care is *negated* due to the nature of the activity and the relationship of the defendant to the plaintiff.[4]

Cohen contends that due to defendant's nondisclosure of the dog's history, he was unaware of the *magnitude* of the risk, since Lobo had only "snapped insignificantly" during his initial encounter with Cohen. *Knight* makes it clear, however, that a plaintiff's subjective knowledge or appreciation of the nature or magnitude of the potential risk is no longer a relevant inquiry. Rather the focus is whether, in light of the nature of the sport or activity involved, it can be said that defendant breached a legal duty of care to plaintiff. (*Knight, supra,* 3 Cal.4th 296, 315-316.) In the sporting context, *Knight* held that a defendant is liable only where he intentionally injures another player or his conduct is so reckless that it is totally outside the range of the ordinary activity involved in an active sport. (*Id.*, at pp. 318, 320.) Applying the same reasoning to the veterinary context, it follows that defendant owed no duty of care to Cohen unless she either engaged in intentional concealment or misrepresentation, or her conduct was so reckless as to fall totally outside the range of behavior ordinarily expected of those who avail themselves of veterinary services. Neither can be said in the present case.

There is nothing in the evidence which would support a conclusion that defendant deliberately or maliciously withheld information from Cohen.

---

[4]Likewise, no duty on the part of defendant can be predicated on Civil Code section 3342, the "dog bite statute," since the statute was designed to protect persons from being bitten in public places, not to protect veterinarians administering treatment in the privacy of their offices. (See *Davis* v. *Gaschler* (1992) 11 Cal.App.4th 1392, 1399 [14 Cal.Rptr.2d 679].)

Defendant brought her male dog to Cohen's office because she wanted him neutered. Cohen did not ask why defendant wanted him neutered and defendant had no reason to believe she needed to tell him. Her failure to volunteer information about Lobo's prior history was particularly understandable in view of the fact that the dog had already displayed aggressive behavior to a point where the vet insisted that the dog be muzzled before the examination could continue. In sum, defendant's silence did not amount to the type of intentional or reckless conduct which would justify an exception to the normal "no duty" rule in a primary assumption of the risk case. (See *Stimson v. Carlson* (1992) 11 Cal.App.4th 1201, 1205-1206 [14 Cal.Rptr.2d 670] [defendant sailboat captain's failure to observe custom of calling out course changes not sufficient "reckless conduct" so as to change the fundamental risk of being struck by a boom while sailing].)[5]

■ Cohen argues that even if this is a "primary" assumption of the risk case, it falls within the established exception holding the doctrine inapplicable where the defendant misrepresents or changes the nature of the hazard which is encountered. Two examples of this exception are found in *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362 [182 Cal.Rptr. 629, 644 P.2d 822] and *Von Beltz* v. *Stuntman, Inc.* (1989) 207 Cal.App.3d 1467 [255 Cal.Rptr. 755].

In *Lipson*, a fireman who was summoned to the scene of a boilover at a chemical plant was falsely told that the accident involved no toxic substances. He took no precautions to protect himself and contracted cancer some years later. The court held, on public policy grounds, that the firefighter's rule should not apply to bar a firefighter who has been injured as a proximate result of defendant's *misrepresentation of the risk* he confronts. (*Lipson* v. *Superior Court, supra*, 31 Cal.3d 362, 371-372.) Similarly, in *Von Beltz*, a stuntwoman participated in a stunt involving a high speed auto chase. Although the first take went without incident, the director changed the stunt on the second take without the plaintiff's knowledge. The second take involved a far more dangerous stunt in which the sports car would "weave in and out of the oncoming cars in serpentine fashion" at twice the original speed. (*Von Beltz* v. *Stuntman, Inc., supra*, 207 Cal.App.3d 1467, 1476.) Relying on *Lipson*, the court held that assumption of the risk should not apply where the defendant changed the nature of the danger the plaintiff confronted. (*Id.*, at pp. 1479-1480.)

---

[5]Cohen's claim that he did not realize the full extent of the danger because he reasonably believed only that the dog might snap at him closely parallels the claim rejected in *Knight*. There, the plaintiff submitted evidence supporting her assertion that she reasonably believed the touch football game in which she took part would be " 'mellow' " and not a serious competitive event in which she could be seriously injured. (*Knight, supra*, 3 Cal.4th 296, 302.) Because the court focused only on the nature of the *defendant's* conduct in the context of the activity, the plaintiff's misapprehension of the danger, whether reasonable or not, did not raise a triable issue of fact such as to avoid summary judgment.

*Lipson* and *Von Beltz* do not control here. In both of those cases the defendants significantly altered the risk without the plaintiff's knowledge. Such behavior would logically fall within the reckless or intentional misconduct exception referred to in *Knight.* Here, however, the risk that the dog might bite remained the same and was acknowledged by both parties. The only alteration of that risk was brought about by Cohen when he removed the muzzle at the conclusion of the examination, thereby exposing himself to the very danger against which he had just guarded.

▪ Finally, Cohen suggests that since the determination of whether there is a duty is traditionally resolved in terms of foreseeability, a jury should be permitted to determine the factual question of whether or not defendant exposed Cohen to a risk of foreseeable harm. But *Knight* makes it clear the determination of whether assumption of risk applies is now a legal, not a factual, issue. The court held that under the revised analysis "the question of the existence and scope of a defendant's duty of care is a *legal* question which depends on the nature of the sport or activity in question and on the parties' general relationship to the activity, *and is an issue to be decided by the court, rather than the jury.* [Citation.] Thus, the question of assumption of the risk is much more amenable to resolution by summary judgment . . . ." (*Knight, supra,* 3 Cal.4th 296, 313, last italics added.)

We conclude that this is a "primary" assumption of the risk case as defined in *Knight,* and that defendant's conduct did not fall so totally outside the ordinary scope of the activity at bar as to justify the imposition of liability. Summary judgment was properly granted.

DISPOSITION

Affirmed.

Kline, P. J., and Benson, J., concurred.