[No. G019278. Fourth Dist., Div. Three. Sept. 30, 1998.]

STEVEN ROSENBLOOM, Plaintiff and Appellant, v.
HANOUR CORPORATION, Defendant and Respondent.

COUNSEL

Worthe, Shaver & Hanson and John R. Hanson for Plaintiff and Appellant.

Spector & Cohen, Adrienne D. Cohen and Michael G. Spector for Defendant and Respondent.

OPINION

**SONENSHINE, J.**—Steven Rosenbloom appeals from a summary judgment entered in favor of Hanour Corporation, doing business as, the Shark Club (the Club), in his personal injury action.

I

Reef Systems, Inc. (Reef) built and maintained a shark aquarium for the Club. After a shark outgrew its tank, the Club hired Reef to move it. Richard

Barbosa, a Reef principal, brought along his employee, Rosenbloom, to help with the endeavor. Barbosa told Rosenbloom to drain the aquarium. Once this was completed, Barbosa directed Rosenbloom to take off his shoes, enter the tank and grab the shark by its tail as Barbosa held its head. Rosenbloom complied, and as the two began lifting the shark, it suddenly thrashed about. Barbosa let go and the shark spun around, biting Rosenbloom's arm.

Rosenbloom filed the underlying suit alleging negligence and strict liability. The Club moved for summary judgment, maintaining Rosenbloom's causes of action were barred under the assumption of the risk doctrine. Rosenbloom requested a continuance, claiming he needed time to take the scheduled depositions of two critical experts who, Rosenbloom claimed, would reveal triable issues of fact necessary to defeat the Club's motion. The court denied Rosenbloom's request and granted the summary judgment motion. Thereafter, the court denied Rosenbloom's Code of Civil Procedure section 1008 petition for reconsideration.

## II

As a general rule, strict liability is imposed upon one who keeps a naturally dangerous animal. (BAJI No. 6.65) Ownership of a human-eating shark would certainly qualify,[1] but liability is not absolute. (See *Milwaukee Electric Tool Corp.* v. *Superior Court* (1993) 15 Cal.App.4th 547, 561 [19 Cal.Rptr.2d 24].) The owner of a naturally dangerous animal may be excused from the usual duty of care: "In cases involving 'primary assumption of risk'—where, by virtue of the nature of the activity and the parties' relationship to the activity, the defendant owes no legal duty to protect the plaintiff from the particular risk of harm that caused the injury—the doctrine . . . operate[s] as a complete bar to the plaintiff's recovery." (*Knight* v. *Jewett* (1992) 3 Cal.4th 296, 314-315 [11 Cal.Rptr.2d 2, 834 P.2d 696].)[2]

*Cohen* v. *McIntyre* (1993) 16 Cal.App.4th 650 [20 Cal.Rptr.2d 143] is instructive. There a dog bit the veterinarian who was treating it. The court determined the veterinarian's claims against the dog's owner were barred

---

[1] Such liability has been imposed on "keepers of lions and tigers, bears, elephants, wolves [and] monkeys." (Prosser & Keeton, Torts (5th ed. 1984) § 76, p. 542, fns. omitted.)

[2] In *Knight,* the Supreme Court disapproved of "earlier cases that applied the doctrine as a bar to liability on the basis of plaintiff's subjective, voluntary assumption of a known risk." (*Neighbarger* v. *Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 537 [34 Cal.Rptr.2d 630, 882 P.2d 347].) Rosenbloom argues the trial court improperly employed this discarded authority and other inapt legal principles when granting the motion. We need not decide the issue because we conduct a de novo review, deciding whether the moving party is entitled to summary judgment as a matter of law. (*Mata* v. *City of Los Angeles* (1993) 20 Cal.App.4th 141, 147 [24 Cal.Rptr.2d 314].)

under the doctrine of assumption of the risk. The court first reviewed application of the primary assumption of the risk doctrine in cases involving firefighters. It noted in those cases courts held a person who negligently starts a fire is not liable for an injury sustained by a firefighter who is called to extinguish the blaze. It explained this "firefighter's rule" is based on the rationale no duty is owed to protect the firefighter from the very danger that he or she is employed to confront. (*Id.* at p. 654)

The *Cohen* court decided the rule had correctly been extended "to veterinarians and their assistants who are bitten while an animal under their control is receiving care and treatment [i.e., the veterinarian's rule]." (*Cohen* v. *McIntyre, supra,* 16 Cal.App.4th at pp. 654-655.) "The risk of being attacked or bitten in the course of veterinary treatment is an occupational hazard which veterinarians accept by undertaking their employment and are in the best position to guard against by taking the necessary precautions." (*Id.* at p. 655, relying on *Nelson* v. *Hall* (1985) 165 Cal.App.3d 709 [211 Cal.Rptr. 668] [veterinary assistant bitten while holding dog before operation].)[3]

The court then held, "[I]t is apparent that this case falls within the 'primary' category of assumption of the risk. . . . [The] . . . veterinarian[] was injured during the course of treating an animal under his control, an activity for which he was employed and compensated and one in which the risk of being attacked and bitten is well known. Thus, this is a classic situation where a defendant's ordinary duty of care is *negated* due to the nature of the activity and the relationship of the defendant to the plaintiff." (*Cohen* v. *McIntyre, supra,* 16 Cal.App.4th at p. 655, fn. omitted, original italics.) In other words, the veterinarian, like the firefighter, cannot recover for injures arising out of the very conditions he or she was hired to confront. The rationale is persuasive in this case.

The Club recognized a certain expertise was necessary for the dangerous task of handling a shark. Accordingly, it hired Reef, a known expert in the field, to do the work.[4] Certainly shark bites were Reef's occupational hazard. And like the firefighter and veterinarian, no duty is owed to protect the shark

---

[3]Rosenbloom incorrectly asserts that the veterinarian's rule, as first developed in *Nelson* v. *Hall, supra,* 165 Cal.App.3d 709, has been "superseded by" later Supreme Court opinions. To the contrary, in *Knight* the Supreme Court cited *Nelson* and several firefighter's rule cases as good examples of the primary assumption of the risk doctrine. (*Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 309-310, fn. 5.) One year later, the court noted in dicta, "If the rule is based . . . appropriately on the defendant's relationship with the veterinarian, and the defendant's conduct in entrusting the animal to the professional care and control of the veterinarian, it may be sound." (*Neighbarger* v. *Irwin Industries, Inc., supra,* 8 Cal.4th at p. 545.)

[4]We reject Rosenbloom's claim his lack of experience with sharks and consequent misapprehension of the danger should be considered. The Supreme Court made clear in "*Knight* . . . that a plaintiff's subjective knowledge or appreciation of the nature or magnitude of the

handler from the very danger that he or she was employed to confront.[5] Under the circumstances, the Club is not liable as a matter of law.[6]

The judgment is affirmed. The Club shall recover its costs on appeal.

Wallin, Acting P. J., and Rylaarsdam, J., concurred.

---

potential risk is no longer a relevant inquiry." (*Cohen* v. *McIntyre, supra* 16 Cal.App.4th at p. 655.) As explained above, all that matters is the defendant's relationship and conduct towards the plaintiff. Here, it is undisputed the Club contracted with a shark expert, entrusting its shark to Barbosa's company's professional care and control. Just as a dog owner owes no duty to hired veterinarians or their assistants (*Nelson* v. *Hall, supra,* 165 Cal.App.3d at p. 714), the Club owed none to Barbosa or the crew acting under his control and supervision.

[5]In his reply brief, Rosenbloom argues there is no public policy in favor of extinguishing the Club's liability. But assumption of the risk doctrine does not hinge upon such considerations. Indeed, the Supreme Court noted this in *Neighbarger:* "Although the elements of public service and public compensation are missing [in application of the veterinarian's rule], the 'defendant's ordinary duty of care is [nevertheless] *negated* due to the nature of the activity and the relationship of the defendant to the plaintiff.' . . . '. . . [V]eterinarians accept [the occupational hazard of dog bites] by undertaking their employment and are in the best position to guard against [such risks] by taking the necessary precautions.' " (*Neighbarger* v. *Irwin Industries, Inc., supra,* 8 Cal.4th at p. 545, citation omitted, original italics.) And, in any event, there are sound policy reasons to excuse the Club's liability. As aptly stated by the Supreme Court, "[I]t is unfair to charge the defendant with a duty of care to prevent injury to the plaintiff arising from the very condition or hazard the defendant has contracted with the plaintiff to remedy or confront." (*Neighbarger* v. *Irwin Industries, Inc., supra,* 8 Cal.4th at p. 542.)

[6]Rosenbloom also contends the court erred in denying his request for more time to gather evidence of disputed facts. But additional facts would make no difference in our determination that the Club's duty was excused as a matter of law. For this same reason, we need not consider Rosenbloom's claim the court erred in denying his motion for reconsideration.