[No. E037544. Fourth Dist., Div. Two. Apr. 5, 2006.]

MASOOD ROSTAI, Plaintiff and Appellant, v.
NESTE ENTERPRISES et al., Defendants and Respondents.

328

**COUNSEL**

Nicastro Piscopo Ogrin, Kenneth Dean Ogrin; and Edward J. Haggerty for Plaintiff and Appellant.

Stone & Hiles and David L. Schaffer for Defendants and Respondents.

## Opinion

**McKINSTER, Acting P. J.**—In this case we hold that the doctrine of primary assumption of the risk is a complete defense to an action for damages based on the alleged negligence of a personal fitness trainer in failing to investigate the cardiac risk factors of a client as a result of which the client allegedly suffered a heart attack during his first training workout. Masood Rostai, plaintiff and appellant (hereafter plaintiff), sued Neste Enterprises doing business as Gold's Gym (hereafter Gold's Gym), and Jared Shoultz, defendants and respondents (hereafter referred to either individually by name or collectively as defendants), for damages based on negligence. In his complaint, plaintiff alleged that he had entered into an agreement with defendants to provide him with a customized physical fitness program; defendants owed plaintiff a duty to investigate his health history, including his current physical condition and cardiac risk factors; on September 11, 2002, plaintiff participated in his first training session at Gold's Gym with defendant Shoultz; defendant Shoultz knew plaintiff was not physically fit and was overweight; defendant Shoultz was aggressive in his training of plaintiff; near the end of the 60-minute training session, after complaining several times to defendant Shoultz that he needed a break, plaintiff suffered a heart attack; and defendants' negligence was a proximate cause of plaintiff's injury.

In their answer to plaintiff's complaint, defendants asserted among other defenses that plaintiff's injury was the result of a risk inherent in strenuous physical activity; that defendants neither increased that risk nor concealed any of the inherent risks; and therefore the doctrine of primary assumption of the risk bars plaintiff's claim. Defendants moved for summary judgment asserting the doctrine of primary assumption of the risk as the basis for their motion. Gold's Gym also asserted that it had no liability for the acts of defendant Shoultz because Shoultz is an independent contractor. Defendants prevailed on summary judgment and plaintiff appeals. We will affirm for reasons we now explain.

## FACTUAL BACKGROUND

The facts are undisputed. Defendant Shoultz is a personal fitness trainer. Pursuant to a contractual agreement, Shoultz pays Gold's Gym a fee in return for which Gold's Gym permits him to use the gym to train his clients. Plaintiff approached Shoultz while he was shopping in plaintiff's furniture store and told Shoultz that he wanted to look like him—buff and physically fit. Shoultz agreed to provide fitness training to plaintiff. Plaintiff had a heart

attack at the end of his first 60-minute training session with Shoultz at Gold's Gym.

## DISCUSSION

Plaintiff contends in this appeal that the trial court incorrectly granted summary judgment in favor of defendants because the doctrine of primary assumption of the risk applies only to sports, and fitness training is not a sport. Defendants, in turn, contend that plaintiff did not assert that "theory" in the trial court, and therefore may not raise it for the first time on appeal. We do not agree with defendants that plaintiff's claim constitutes a new theory, as opposed to a new argument based on the same theory relied on in the trial court. However, we will not address defendants' assertion because plaintiff simply is wrong in his view that the legal principle of primary assumption of the risk only applies to sports.

### 1.

### STANDARD OF REVIEW

Summary judgment should be granted if no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) The burden of persuasion is on the party moving for summary judgment. When the defendant is the moving party, the defendant must show the action has no merit. That showing is made if the defendant either negates an element of the plaintiff's cause of action or establishes that a complete defense exists. The burden then shifts to the plaintiff to show that a triable issue of material fact exists with respect to the cause of action or defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 [107 Cal.Rptr.2d 841, 24 P.3d 493].) On appeal, we review the record and the trial court's decision de novo. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

### 2.

### PRIMARY ASSUMPTION OF THE RISK

■ To prevail on his negligence claim, plaintiff had to show, among other things, that defendants owed him a legal duty of care and that they breached that duty. (*Merrill v. Navegar, Inc., supra*, 20 Cal.4th at p. 477.) The doctrine of primary assumption of the risk is an exception to the general rule that people "have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. (See Civ. Code,

§ 1714.)" (*Knight v. Jewett* (1992) 3 Cal.4th 296, 315 [11 Cal.Rptr.2d 2, 834 P.2d 696] (*Knight*).) The doctrine applies "where, by virtue of the nature of the activity and the parties' relationship to the activity, the defendant owes no legal duty to protect the plaintiff from the particular risk of harm that caused the injury . . . ." (*Knight*, at pp. 314–315.) The question of whether the defendant owes the plaintiff a duty of care "is one of law to be decided by the court, not by a jury, and therefore it generally is 'amenable to resolution by summary judgment.' [Citation.]" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1004 [4 Cal.Rptr.3d 103, 75 P.3d 30] (*Kahn*).)

### 3.

## DUTY OF CARE OWED BY PERSONAL FITNESS TRAINER

No California case has addressed the question presented in this appeal, namely, whether fitness training under the guidance of a personal trainer is an activity to which the doctrine of primary assumption of the risk applies. A similar issue—whether primary assumption of the risk applies to bar recovery for injuries sustained during a slide aerobics class taught at a fitness gym—was raised in *Sanchez v. Bally's Total Fitness Corp.* (1998) 68 Cal.App.4th 62 [79 Cal.Rptr.2d 902], but the appellate court (Division Four of the Second District) affirmed the summary judgment in that case based on the release clause the plaintiff signed when she joined the gym. *Corrigan v. Musclemakers Inc.* (1999) 258 A.D.2d 861 [686 N.Y.S.2d 143], a New York appellate decision that plaintiff cites, holds that the doctrine of primary assumption of the risk does not bar recovery by a patron of a fitness gym who broke her ankle when she fell off the back of a treadmill after a personal fitness trainer put her on the machine but failed to instruct her in its use. The case is inapposite, not only because it is not based on California law, but also because it concerns an injury that resulted from use of equipment rather than from mere participation in the activity. In short, we are writing on a clean slate.

Although there is no published decision that addresses the specific activity of physical fitness training under the guidance of a personal trainer, the doctrine of primary assumption of the risk is the subject of numerous published decisions, several of which address application of the doctrine in the analogous context of student and instructor. (See, e.g., *Kahn, supra,* 31 Cal.4th 990 [novice swimmer and swim team coach]; *Lupash v. City of Seal Beach* (1999) 75 Cal.App.4th 1428 [89 Cal.Rptr.2d 920] [participant in junior lifeguard competition and instructor]; *Aaris v. Las Virgenes Unified School Dist.* (1998) 64 Cal.App.4th 1112 [75 Cal.Rptr.2d 801] [high school cheerleader and coach]; *Bushnell v. Japanese-American Religious & Cultural Center* (1996) 43 Cal.App.4th 525 [50 Cal.Rptr.2d 671] [judo student and

instructor].) Fitness training under the guidance of a personal trainer is an activity in which a student learns from and is directed by an instructor. Therefore, we rely on the principles and analyses set out in the cited cases to resolve the issue presented in this appeal.

The most recent decision to address the issue of the liability of an instructor to a student is *Saville v. Sierra College* (2005) 133 Cal.App.4th 857 [36 Cal.Rptr.3d 515] (*Saville*), in which our colleagues in the Third District addressed the question of whether primary assumption of the risk bars recovery by a student injured while practicing arrest and control techniques as part of a peace officer training course. In *Saville*, the plaintiff argued that the takedown maneuver at issue in that case was not an "activity or sport" to which the doctrine of primary assumption of the risk applied. In rejecting that argument, the Third District first acknowledged that in 1993 it had limited application of the doctrine of primary assumption of the risk "to sports activities. [Citation.] Since then, however, courts have extended the doctrine's reach. The Supreme Court, for example, declared the 'firefighter's rule,' under which a person who negligently started a fire is not liable for injuries suffered by a firefighter battling the fire, was a proper application of the primary assumption of risk doctrine. [Citation.] This rule of assumption of risk has nothing to do with sports." (*Saville, supra*, 133 Cal.App.4th at p. 870.) The *Saville* court cited other situations in which primary assumption of the risk had been applied to bar recovery and concluded that " '[t]he full scope of the defense of primary assumption of risk has yet to be established.' [Citation.]" (*Saville*, at p. 871.) "The *Knight* court stated the doctrine applied to *activities* or sports. Nowhere did it limit the scope of activities subject to the defense only to sports . . . . Instead, it established the defense's governing principles of risk for application on a case-by-case basis." (*Saville*, at p. 871.)

■ According to the principles set out in *Knight*, to determine whether a duty of care exists ·we look first at the nature of the activity in which the plaintiff was engaged and then at the relationship between the plaintiff and the defendant while participating in that activity. (*Knight, supra*, 3 Cal.4th at pp. 314–315.)

■ With respect to the nature of the activity, the doctrine of primary assumption of the risk applies "where '*conditions* or *conduct* that otherwise might be viewed as dangerous often are an integral part of the sport [or activity] itself.' [Citation.]" (*Saville, supra*, 133 Cal.App.4th at p. 867, quoting *Knight, supra*, 3 Cal.4th at p. 315.) "In these types of activities, the integral conditions of the sport or the inherent risks of careless conduct by others render the possibility of injury obvious, and negate the duty of care usually owed by the defendant for those particular risks of harm. [Citation.] A duty imposed in those situations would significantly change the very purpose or

nature of the activity. 'The overriding consideration in the application of primary assumption of risk is to avoid imposing a duty which might chill vigorous participation in the implicated activity and thereby alter its fundamental nature.' [Citations.]" (*Saville*, *supra*, 133 Cal.App.4th at p. 868.) Simply put, and contrary to plaintiff's view, primary assumption of the risk is not limited to sports but applies to any physical activity that involves an element of risk or danger as an integral part of the activity. (*Knight*, at p. 315.)

Fitness training under the guidance of a personal trainer is such an activity. The obvious purpose of working out with a personal trainer is to improve physical fitness and appearance. In order to accomplish that goal, the participant must engage in strenuous physical activity. The risks inherent in that activity include physical distress in general, and in particular muscle strains, sprains, tears, and pulls, not only of the obvious muscles such as those in the legs and arms, but also of less obvious muscles such as the heart. Stress on the cardiovascular system as a result of the physical exertion that is an integral part of fitness training with a personal trainer is a risk inherent in the activity. Eliminating that risk would alter the fundamental nature of the activity.

Our inquiry does not end with our determination that physical stress and injury, which includes stress on the heart, are inherent risks in working out under the direction of a personal trainer. *Knight* instructs that in addressing the question of duty we must also consider the parties' relationship while participating in that activity. In other words, we must consider the "role of the defendant whose conduct is at issue in a given case." (*Knight*, *supra*, 3 Cal.4th at p. 318.) "Duties with respect to the same risk may vary according to the *role* played by particular defendants involved in the sport [or activity]. In the sport of baseball, for example, although the batter would not have a duty to avoid carelessly throwing the bat after getting a hit—vigorous deployment of a bat in the course of a game being an integral part of the sport—a stadium owner, because of his or her different relationship to the sport, may have a duty to take reasonable measures to protect spectators from carelessly thrown bats. For the stadium owner, reasonable steps may minimize the risk without altering the nature of the sport." (*Kahn*, *supra*, 31 Cal.4th at p. 1004, citing *Knight*, at p. 317.)

In *Knight*, the Supreme Court considered the duty of care owed by participants in a sport or activity, in that case touch football. The relationship at issue in *Kahn* was that of a high school swim team coach and a novice swimmer who broke her neck after the coach insisted that she start a race by diving from the diving block even though the swimmer had not been trained in the use of the block and had started prior races from the pool. The *Kahn* court held that primary assumption of the risk bars liability predicated on

negligence: "In order to support a cause of action in cases in which it is alleged that a sports instructor has required a student to perform beyond the student's capacity or without providing adequate instruction, it must be alleged and proved that the instructor acted with intent to cause a student's injury or that the instructor acted recklessly in the sense that the instructor's conduct was 'totally outside the range of the ordinary activity' [citation] involved in teaching or coaching the sport." (*Kahn, supra*, 31 Cal.4th at p. 1011, citing *Knight, supra*, 3 Cal.4th at p. 318.) The court reasoned that a standard of intentional or reckless conduct on the part of an instructor was necessary in order to be consistent with the purpose of the doctrine of primary assumption of the risk, which is to avoid altering the nature of the activity or chilling vigorous participation in the activity by imposing a duty of care. (*Kahn*, at p. 1011.)

Although plaintiff phrases his claim against defendant Shoultz in terms of failing to adequately assess plaintiff's physical condition and in particular his cardiac risk factors, the essence of plaintiff's claim is that Shoultz, in his capacity as plaintiff's personal fitness trainer, challenged plaintiff to perform beyond his level of physical ability and fitness. That challenge, however, is the very purpose of fitness training, and is precisely the reason one would pay for the services of a personal trainer. Like the coach in other sports or physical activities, the personal trainer's role in physical fitness training is not only to instruct the participant in proper exercise techniques but also to develop a training program that requires the participant to stretch his or her current abilities in order to become more physically fit. The trainer's function in the training process is, at bottom, to urge and challenge the participant to work muscles to their limits and to overcome physical and psychological barriers to doing so. Inherent in that process is the risk that the trainer will not accurately assess the participant's ability and the participant will be injured as a result.

"To instruct is to challenge, and the very nature of challenge is that it will not always be met. It is not unreasonable to require a plaintiff who has chosen to be instructed in a particular activity to bear the risk that he or she will not be able to meet the challenges posed by the instructor, at least in the absence of intentional misconduct or recklessness on the part of the instructor. Any other rule would discourage instructors from asking their students to do anything more than they have done in the past, would therefore have a chilling effect on instruction, and thus would have a negative impact on the very purpose for seeking instruction: mastering the activity." (*Bushnell v. Japanese-American Religious & Cultural Center, supra*, 43 Cal.App.4th at p. 534.) Stated otherwise, "There is nothing tortious about a coach who pushes student athletes to keep trying even when they are tired or upset." (*Lupash v. City of Seal Beach, supra*, 75 Cal.App.4th at p. 1440.)

■ Application of the principles established in *Knight* leads us to conclude in this case that the physical activity of fitness training under the guidance of a personal fitness trainer is one to which the doctrine of primary assumption of the risk applies. Therefore, defendants did not owe plaintiff a duty of care. (See *Knight, supra,* 3 Cal.4th at p. 308 [the doctrine of primary assumption of the risk "embodies a legal conclusion that there is 'no duty' on the part of the defendant to protect the plaintiff from a particular risk"].) We conclude here, as the court did in *Kahn,* that in order to state a cause of action against a personal fitness trainer, such as defendant Shoultz, a plaintiff must allege and prove that the trainer acted either with intent to cause injury or that the trainer acted recklessly in that the conduct was " 'totally outside the range of ordinary activity' [citation] involved in [personal fitness training]." (*Kahn, supra,* 31 Cal.4th at p. 996.)

Plaintiff did not allege such a claim and instead alleged a claim predicated on ordinary negligence. Therefore, the trial court properly granted defendants' summary judgment motion on the ground that plaintiff's claim was subject to the doctrine of primary assumption of the risk and barred. Moreover, even if argued, the evidence in this case does not show either intent to injure or reckless conduct on the part of defendant Shoultz. The evidence reveals that at the time of the initial workout session, plaintiff was 46 years old, overweight, and did not exercise.[1] Defendant Shoultz put plaintiff through a workout that started with 12 to 13 minutes on a level treadmill at a pace of three to four miles per hour. Shoultz then had plaintiff sit on an incline bench and lift weights over his head. Plaintiff performed 10 repetitions with 40 pound weights followed by 10 more repetitions with slightly heavier weights. Plaintiff then asked for a break, but defendant Shoultz said, "Later," and had plaintiff do 10 push-ups. When plaintiff again asked for a break, after telling defendant Shoultz that he was really tired and out of breath, defendant Shoultz said, "Don't be a pussy" and "First give me ten sit-ups."

Plaintiff completed the sit-ups, and defendant Shoultz instructed him to return to the incline bench and repeat the earlier weight exercise but with the next heavier weight and at a faster tempo. After four or five repetitions, plaintiff said he could not do any more and stopped. Defendant Shoultz reputedly pointed to a nearby woman and said to plaintiff, "Come on, don't you want to get some of this ass?"

Defendant Shoultz then had plaintiff lie down on a mat and lift both legs simultaneously. Plaintiff performed one leg lift and stopped. Defendant

---

[1] In his trial court filings, plaintiff claimed that he had not been exercising or working out, although he viewed his work as providing some exercise, and he was approximately five feet 10 inches tall and weighed 228 pounds.

Shoultz grabbed plaintiff's legs and pushed them toward plaintiff's head 10 to 12 times. Toward the end of this exercise plaintiff began to experience chest pain, but he did not tell defendant Shoultz. Instead, plaintiff told defendant Shoultz that he was out of breath, could not breathe, and needed some water. The workout stopped because plaintiff felt he could not continue. After pouring water over his head, plaintiff laid down on the floor while he experienced extreme pain. After about five minutes, plaintiff said, "Call 911, I think I'm having a heart attack."

The evidence recounted above shows at most that defendant Shoultz did not accurately assess plaintiff's level of physical fitness. He also may have interpreted plaintiff's physical complaints, including his tiredness, shortness of breath, and profuse sweating, as the usual signs of physical exertion due to lack of conditioning rather than as symptoms of a heart attack. There is no evidence, however, that defendant Shoultz acted with intent to injure plaintiff or acted recklessly and thereby increased the risk inherent in the activity itself. Because the undisputed evidence in this case fails to show that defendant Shoultz breached a duty of care owed to plaintiff, we must affirm the summary judgment entered as to him.

### 4.

### DUTY OF CARE OWED BY GYM

We reach the same conclusion as to defendant Gold's Gym. Plaintiff claims that Gold's Gym had a duty to monitor the health of its members, and therefore is directly liable to him for breach of that duty. In addition, plaintiff contends that Gold's Gym is vicariously liable for the negligent acts of defendant Shoultz, even though Shoultz is an independent contractor. We address this latter assertion first.

Because we have concluded that defendant Shoultz did not owe a duty of due care to plaintiff, and therefore did not breach that duty, there is no basis upon which to impose vicarious liability on Gold's Gym. In short, defendant Shoultz did not commit a wrongful or tortious act and there is no basis for liability against him or Gold's Gym as a result of Shoultz's conduct.

With respect to direct liability, plaintiff does not cite any legal authority to support his assertion that Gold's Gym owed him a duty to monitor his health while he worked out at the gym. Instead, plaintiff supports that claim with a citation to the declaration of Robert Girandola, M.A., Ed.D., an associate professor of exercise science at the University of Southern California, which plaintiff submitted as part of his opposition to defendants' summary judgment motion. In the pertinent part of that declaration, Dr. Girandola states his

belief, first, that "greater scrutiny should be exercised in monitoring individuals at health and fitness clubs like Gold's Gym," and next, that "defendant Gold's Gym's acts and omissions also constituted a substantial factor in the cause of [plaintiff's] heart attack."

Apart from the fact that the trial court sustained defendants' objection to the portion of the declaration in which the witness expressed his belief regarding causation,[2] plaintiff's showing is inadequate because, as previously discussed, whether a duty of care exists is a question of law and thus is an issue for the court to resolve. (*Kahn, supra*, 31 Cal.4th at p. 1004.)

██ As the provider of the venue in which the physical activity of fitness training takes place, Gold's Gym does not have a duty to eliminate the risks inherent in that activity. (*Knight, supra*, 3 Cal.4th at p. 315.) As the Supreme Court explained in *Knight*, "In the sports setting . . . conditions or conduct that otherwise might be viewed as dangerous often are an integral part of the sport itself. Thus, although moguls on a ski run pose a risk of harm to skiers that might not exist were these configurations removed, the challenge and risks posed by the moguls are part of the sport of skiing, and a ski resort has no duty to eliminate them. [Citation.] In this respect, the nature of a sport is highly relevant in defining the duty of care owed by the particular defendant." (*Ibid.*) In other words, in the context of providing the place in which a sport or physical activity occurs, defendants "generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport . . . ." (*Ibid.*)[3]

As discussed above, injury resulting from the physical stress of working out at a gym with a personal trainer, even an injury as serious as a heart attack, is a risk inherent in that activity. Therefore, Gold's Gym did not have a duty to protect plaintiff from such an injury by monitoring his physical response during his fitness training session. Because neither defendant Shoultz nor defendant Gold's Gym owed a duty of due care to plaintiff to eliminate the risk of physical injury inherent in the activity of working out with a personal fitness trainer, the trial court properly granted summary judgment in their favor in this case.

---

[2] Plaintiff claims that the trial court's ruling does not include the sentence in question. Our review of that ruling persuades us otherwise.

[3] Like the owner and operator of the hypothetical ski resort referred to in *Knight*, the owner and operator of a gym owes its members a duty to maintain the equipment in safe, working order. (See *Knight, supra*, 3 Cal.4th at p. 316.) Because plaintiff does not claim his injuries were the result of defective equipment, we will not discuss this duty.

## DISPOSITION

The judgment is affirmed. Defendants to recover their costs on appeal.

Richli, J., and Gaut, J., concurred.