Filed 7/24/14  Barrett v. Leech CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| NANCY L. BARRETT, as Successor in Interest, etc.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JAMES E. LEECH,<br><br>    Defendant and Respondent. | D063991<br><br><br><br><br>(Super. Ct. No. 37-2011-00098545-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

Law Offices of Steven Berkowitz and Steven Berkowitz for Plaintiff and Appellant.

Boles & DiMascio, John D. Culver, Jr.; Greines, Martin, Stein & Richland, Robert A. Olson and Gary J. Wax for Defendant and Respondent.

Patrick Barrett worked as a horse farrier (a person who attends to horses' hooves) for more than 45 years. Defendant James E. Leech hired Patrick[1] to trim his horses' hooves. While Patrick was doing so, one of the horses knocked him down as he was attempting to secure it, causing him to fall and hit his head on a rock. As a result of his injuries, he passed away.

Patrick's widow and successor in interest, plaintiff Nancy Barrett, sued Leech for premises liability and wrongful death, arguing that Leech had negligently allowed his corral to remain rocky, contributing to her husband's death. The court granted summary judgment in favor of Leech, finding the horse caused the fall, not the rocky terrain. The court further found Leech owed Patrick no legal duty under the "occupational assumption of risk" doctrine to protect Patrick from the risks of his inherently dangerous occupation.

Nancy appeals, asserting the primary assumption of risk doctrine does not apply where, as here, the landowner not only failed to use due care to eliminate dangerous conditions on his property (rocks in the horses' corral), but actually created them, which contributed to Patrick's injuries and resulting death. We affirm.

FACTUAL BACKGROUND

A. *Patrick's Experience as a Farrier*

Patrick was a horse farrier by trade. As such, he routinely trimmed horses' hooves. After attending farrier school in 1963, he trimmed thousands of horses' hooves for more

---

[1]    Because Patrick and his wife share the same last name, in the interests of clarity we refer to them by their first names. We intend no disrespect.

2

than 45 years. Nancy does not dispute that one of the hazards that horse farriers routinely face is the inherent unpredictability of a horse's behavior.

B. *Leech Hires Patrick To Trim His Horses' Hooves*

Leech hired Patrick, as he had done in the past, to trim his horses' hooves at an outdoor corral that he owned. Patrick was accompanied by an assistant. He also came equipped with his own halter to secure the horses.

Leech left his horses loose in the corral for Patrick, which had always been his custom and practice. It is undisputed that the corral was very rocky.

C. *The Incident Leading to this Action*

In attempting to secure one of the horses for hoof-trimming, Patrick was hit by the horse's chest or possibly the horse's face, which caused him to fall and hit his head on one of the rocks that covered the corral area. As a result of that fall, he suffered serious head trauma. He later died from the injuries he sustained.

D. *The Instant Lawsuit*

Patrick's widow, Nancy, sued Leech for premises liability and wrongful death, asserting that Leech acted negligently by: (1) failing to secure and restrain the horses prior to the Patrick's arrival, (2) failing to maintain the corral grounds in a reasonably safe condition, (3) permitting thousands of rocks to remain on the corral grounds, (4) failing to warn Patrick that the corral contained thousands of rocks, and (5) failing to warn Patrick that the horse allegedly had a volatile disposition and temperament.

3

E. *Summary Judgment Motion*

Leech moved for summary judgment, arguing that: (1) the primary assumption of risk doctrine applied to the inherently dangerous horse-farrier occupation, barring recovery for attendant risks; and (2) as Patrick was hired as an independent contractor, *Privette*[2] and its progeny barred recovery for safety issues undertaken by the horse farrier.

In response, Nancy argued that a "special relationship" of landowner/invitee existed, imposing a legal duty on Leech to take affirmative measures to protect or come to the farrier's aid. She also argued that Leech had increased the risks in hoof trimming by creating and maintaining a rocky corral.

F. *Court's Ruling*

The court granted summary judgment. It ruled that primary assumption of risk applies to the inherently dangerous occupation of a horse farrier, barring the suit as a matter of law.

At the hearing on the summary judgment motion, the court found it "curious" that Nancy had not attempted to distinguish, or even address, the "veterinary cases" that hold that the primary assumption of risk doctrine bars injuries caused during the course of working in inherently dangerous animal-handling occupations.

The court also concluded that the exception to primary assumption of risk, applicable where a defendant increases the activity's risks, did not apply because, while

---

[2]    *Privette v. Superior Court* (1993) 5 Cal.4th 689.

4

Leech's conduct may have increased the severity of the injury suffered, it did not increase the risk of injury. As a result of these findings, the court did not reach the *Privette* issue—i.e., that by hiring an independent contractor, the owner was not liable for safety issues within the purview of the contractor.

## DISCUSSION

### I. *Standard of Review*

"Summary judgment is proper only if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law." (*Calhoon v. Lewis* (2000) 81 Cal.App.4th 108, 112 (*Calhoon*); Code Civ. Proc., § 437c, subd. (c).) "Since the existence of the primary assumption of the risk is dependent upon the existence of a legal duty, and since duty is an issue of law to be decided by the court, the applicability of that defense is amenable to resolution by summary judgment." (*Freeman v. Hale* (1994) 30 Cal.App.4th 1388, 1395.)

In reviewing a summary judgment, we must "'strictly construe the moving party's papers and liberally construe those of the opposing party to determine if they raise a triable issue of material fact.' [Citation.] We conduct a de novo review . . . ." (*Calhoon*, *supra*, 81 Cal.App.4th at p. 112.)

### II. *Assumption of Risk*

#### A. *Legal Principles*

In *Knight v. Jewett* (1992) 3 Cal.4th 296 (*Knight*), the Supreme Court considered the proper application of the assumption of risk doctrine in light of its adoption of comparative fault principles in *Li v. Yellow Cab Co*. (1975) 13 Cal.3d 804. The court

"distinguished between (1) primary assumption of risk—'those instances in which the assumption of risk doctrine embodies a legal conclusion that there is "no duty" on the part of the defendant to protect the plaintiff from a particular risk'—and (2) secondary assumption of risk—'those instances in which the defendant does owe a duty of care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty.' [Citation.] Primary assumption of risk, when applicable, completely bars the plaintiff's recovery. [Citation.] The doctrine of secondary assumption of risk, by contrast, 'is merged into the comparative fault scheme, and the trier of fact, in apportioning the loss resulting from the injury, may consider the relative responsibility of the parties.'" (*Cheong v. Antablin* (1997) 16 Cal.4th 1063, 1067-1068, quoting *Knight*, *supra*, 3 Cal.4th at pp. 308, 314-315.)

"As a general rule, each person has a duty to use ordinary care and 'is liable for injuries caused by his [or her] failure to exercise reasonable care in the circumstances . . . .'" (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 472, quoting *Rowland v. Christian* (1968) 69 Cal.2d 108, 112; Civ. Code, § 1714.) However, "[u]nder the primary assumption of risk doctrine, there is no duty to eliminate or protect a plaintiff against risks that are inherent in a sport or activity." (*Calhoon*, *supra*, 81 Cal.App.4th at p. 115; *Knight*, *supra*, 3 Cal.4th at pp. 315-316.) In determining whether a risk is inherent in an activity, we consider the record and common sense. (*Zipusch v. LA Workout, Inc.* (2007) 155 Cal.App.4th 1281, 1292.) "[T]he question whether the defendant owed a legal duty to protect the plaintiff from a particular risk of harm does not turn on the reasonableness or unreasonableness of the plaintiff's conduct, but rather on

6

the nature of the activity or sport in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity or sport." (*Knight*, *supra*, 3 Cal.4th at p. 309.)

Because the question whether defendant owes the plaintiff a duty of care is one of law to be decided by the court, it is amenable to resolution by summary judgment. (*Rostai v. Neste Enterprises* (2006) 138 Cal.App.4th 326, 331.)

B. *Analysis*

Nancy asserts that the assumption of risk doctrine is limited to sports and that as a property owner Leech owed a higher duty of care. This contention is unavailing. The assumption of risk doctrine encompasses "any physical activity that involves an element of risk or danger as an integral part of the activity." (*Rostai v. Neste Enterprises, supra,* 138 Cal.App.4th at p. 333; *Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1163-1164 [bumper car ride at amusement park is inherently dangerous].) *Knight* is controlling in all primary assumption of risk cases in California, including those involving an inherently dangerous occupation. (*Priebe v. Nelson* (2006) 39 Cal.4th 1112, 1132 (*Priebe*) [kennel worker bitten by dog].)

Indeed, courts have applied the rule in so many different workplace settings that the doctrine is now often referred to as "occupational assumption of the risk." (*Priebe, supra,* 39 Cal.4th at p. 1119.) It has been applied to firefighters (*Neighbarger v. Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 542-543); peace officers (*Kelhi v. Fitzpatrick* (1994) 25 Cal.App.4th 1149, 1161); private security guards (*Tilley v. CZ Master Assn.* (2005) 131 Cal.App.4th 464, 489-490); lifeguards (*City of Oceanside v. Superior Court*

7

(2000) 81 Cal.App.4th 269, 282, 285); movie stunt performers (*Angelotti v. Walt Disney Co.* (2011) 192 Cal.App.4th 1394, 1401, 1406-1407); kennel workers (*Priebe, supra,* 39 Cal.4th at p. 1132); and shark handlers (*Rosenbloom v. Hanour Corp.* (1998) 66 Cal.App.4th 1477, 1480-1481.)

Most analogous to this case, it has been applied to veterinarians and their assistants. (*Cohen v. McIntyre* (1993) 16 Cal.App.4th 650, 654-655; *Willenberg v. Superior Court* (1986) 185 Cal.App.3d 185, 186-187; *Nelson v. Hall* (1985) 165 Cal.App.3d 709, 714-715 (*Nelson*).)

When a veterinarian is injured during the course of treating an animal under his or her control, the animal owner owes the veterinarian no legal duty, as a matter of law, because the job carries with it a well-known risk of being attacked and bitten. (*Priebe, supra,* 39 Cal.4th at p. 1130; *Nelson, supra,* 165 Cal.App.3d at p. 714.) "In other words, the veterinarian, like the firefighter, cannot recover for injures arising out of the very conditions he or she was hired to confront." (*Rosenbloom v. Hanour Corp., supra,* 66 Cal.App.4th at p. 1480.)

The cases applying the "veterinarian's rule" govern situations like this case where a plaintiff confronts unpredictable animals as an inherent part of the job. (*Priebe, supra,* 39 Cal.4th at p. 1122.) As the California Supreme Court has held, "veterinarians, their trained assistants, and those in similarly situated professions (e.g., dog groomers, kennel technicians) are in the best position, *and usually the only position,* to take the necessary safety precautions and protective measures to avoid being bitten or otherwise injured by [an animal] left in their care and control." (*Id.* at p. 1130.)

8

For example, *Priebe, supra,* 39 Cal.4th at page 1132, held that the veterinarian's rule barred a claim by an injured kennel worker who, by virtue of her occupation, assumed the risk of being injured by the dogs under her care and control. In that case our high court held that the owner was in no position to supervise or prevent any conduct on the part of the dog because determining "'the best way to handle the dog while at the kennel, and what protective measures, if any, should be taken to ensure employee safety'" fell on the plaintiff professional animal handler. (*Id.* at p. 1129.)

Similarly, in *Nelson, supra,* 165 Cal.App.3d at page 715, the Court of Appeal affirmed summary judgment for a defendant dog owner where a dog undergoing veterinary treatment bit the plaintiff, the veterinarian's assistant. The *Nelson* court held that the assistant's tort claim was barred by assumption of risk because the "risk of dog bites during treatment is a specific known hazard endemic to the very occupation in which plaintiff voluntarily engaged." (*Id.* at p. 714.)

The court in *Nelson* held that the duty of handling the animal is on the hired specialist: "The veterinarian determines the method of treatment and handling of the dog. He or she is the person in possession and control of the dog and is in the best position to take necessary precautions and protective measures." (*Nelson, supra,* 165 Cal.App.3d at p. 715.)

In *Willenberg v. Superior Court, supra,* 185 Cal.App.3d at page 187, the Court of Appeal applied the veterinarian's rule to bar a claim by a veterinarian injured when a dog he was treating suddenly leapt off the examination table. In doing so, the court noted that

9

"a visit to the veterinarian's office can bring about unpredictable behavior in a normally docile animal, and this is an inherent risk which every veterinarian assumes." (*Ibid.*)

*Cohen v. McIntyre, supra,* 16 Cal.App.4th at page 655, held that where a licensed veterinarian is injured during the course of treating an animal under his or her control, the primary assumption of risk defense bars his or her negligence claim. In such cases, there are no factual issues for a jury to decide. (*Id.* at p. 657.) Thus, the Court of Appeal held summary judgment in favor of the defendant was proper. (*Ibid.*)

In this case, Leech cited and discussed these veterinarian's rule authorities in moving for summary judgment. Nancy did not address them in opposing summary judgment. On appeal, Nancy once again does not address these cases in her opening brief. We conclude that the job of a farrier is an inherently dangerous occupation as much, or more so, than that of a veterinarian, and therefore the assumption of risk doctrine applies to bar Nancy's claims.

Cases have noted that horses, by their nature, are unpredictable and "difficult to control." (*Shelly v. Stepp* (1998) 62 Cal.App.4th 1288, 1294-1295.) There is always a risk that a horse will "buck, bite, break into a trot, stumble or 'spook' when confronted by a frightening event," causing a person to suffer an injury. (*Harrold v. Rolling J Ranch* (1993) 19 Cal.App.4th 578, 588.) Courts have described these risks as nothing more than "a 'horse behaving as a horse.'" (*Ibid.*; *Levinson v. Owens* (2009) 176 Cal.App.4th 1534, 1538.)

Like veterinarians, Patrick, as a horse farrier, faced occupational dangers, including the risk of being kicked, pushed or bumped by a horse. As a farrier entrusted

10

with control of Leech's horses, Patrick, not the owner, was "'in the best position to take necessary precautions and protective measures'" to avoid injury. (*Priebe, supra,* 39 Cal.4th at p. 1130.) Thus, the owner, Leech, is not liable for the farrier's inability to control the horse on the date of the accident.

In her opening brief Nancy relies heavily on the fact that the "entire corral area was blanketed with rocks, many of which were large and pointed." However, this fact is of no moment.

The record shows that the horse caused the farrier to fall, not the rocks. Specifically, the horse's chest or face hit the farrier, causing him to fall backwards and hit his head on one of the many rocks that covered the corral area.

Nancy asserts that primary assumption of risk does not apply because Leech "significantly increased the risk to Patrick" by: (1) "creating and maintaining a dangerous surface," and (2) "failing to secure or restrain the horse, or to even assist in that activity." This contention is unavailing.

Leech may have had a duty not to *increase* the risk of harm beyond the inherent risks in the farrier's job (see *Amezcua v. Los Angeles Harley-Davidson, Inc.* (2011) 200 Cal.App.4th 217, 231-232), but he had no duty to decrease the risk of harm (*Balthazor v. Little League Baseball, Inc.* (1998) 62 Cal.App.4th 47, 52). A landowner owes no duty to remedy or warn of an obvious danger on his or her property. (*Danieley v. Goldmine Ski Associates* (1990) 218 Cal.App.3d 111, 121-122 (*Danieley*).) "Generally, if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the

11

condition." (*Krongos v. Pacific Gas & Electric Co.* (1992) 7 Cal.App.4th 387, 393; see *Allen v. Jim Ruby Construction Co.* (1956) 138 Cal.App.2d 428, 434 ["possessor of land has no duty toward persons who come upon the land to change the method of his operations which are carried on so openly as to be obvious to all observers," including "the conditions of the surface" where work is being performed].)

In her opening brief Nancy states that the "entire corral area was blanketed with rocks" and a number of these rocks "were six inches or larger in diameter." The assistant who accompanied Patrick on the day of the accident testified that he noticed the ground's surface "was very uneven" and that it had "[l]ots of rocks." The assistant stated the rocks were so obvious on the day of the accident that he "had to be careful where [he] walked." Thus, Leech had no duty to warn about any dangers that obvious rocks might pose to a horse farrier.

Nancy attempts to analogize the rocky terrain on Leech's property to "large exposed sharp rocks" on a ski slope. However, this analogy actually supports Leech's position. A ski resort has *no* duty to remove open and obvious obstructions that are on, or next to, a ski run because they are deemed obvious dangers that, themselves, serve as warnings. (*Danieley, supra,* 218 Cal.App.3d at p. 124; *O'Donoghue v. Bear Mountain Ski Resort* (1994) 30 Cal.App.4th 188, 192; *Knight, supra,* 3 Cal.4th at pp. 315-316.) Such obvious dangers include trees or rocks. (*Danieley, supra,* 218 Cal.App.3d at p. 124.)

Likewise, in this case it is undisputed that the rocks in the corral were open and obvious. Thus, Nancy's ski slope analogy actually supports the court's grant of summary judgment.

Nancy also contends that the owner "placed rocks in the corral areas of his property," thereby "creating" a dangerous surface. However, this argument misstates the record. The owner Leech testified that he added "boulders" to the corral areas for his llamas to climb on.

Nancy also asserts that Leech had an affirmative duty to secure or restrain his horses for the farrier or to assist him in that activity. However, securing the horses was an essential part of the job for which the farrier Patrick was hired. The owner had no duty to secure the horses once he gave up care and control to the specialist. (*Priebe, supra*, 39 Cal.4th at p. 1130 [owner owed kennel worker no duty to restrain dog].)

Nancy contends that the farrier and the owner had a "special relationship" due to the farrier's status as an "invitee" on the premises. However, even if this were the case,[3] an invitee still could not recover "where the danger was obvious." (*Henderson v. McGill* (1963) 222 Cal.App.2d 256, 259; *Pauly v. King* (1955) 44 Cal.2d 649, 653 [holding that a landowner "'is not liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.'"].)

---

[3] The classifications of invitee, licensee or trespassers are no longer determinative of the liability of a landowner. (*Lundy v. California Realty* (1985) 170 Cal.App.3d 813, 818.)

13

In sum, Leech owed no duty to ensure the farrier's safety from horses in an obviously rocky corral. The farrier assumed the risks of his inherently dangerous occupation and all of its associated risks.

Nancy also asserts that three triable issues of material fact exist: (1) The farrier never placed a halter on the horse even though he had one with him, (2) the rocky terrain was atypical of horse corrals, and (3) it was physically possible to remove the rocks from the owner's property. However, Nancy in her opening brief fails to explain how any of these facts are material. "'[E]vidence which does not relate to a matter in issue is *immaterial*.'" (*Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 67.)

Whether Patrick actually succeeded in placing the halter on and restraining the horse is irrelevant. He brought a halter to restrain the horse. He entered the corral to work on the horse, which obviously was not yet restrained. He had thereby assumed all of the dangers and risks of being in close proximity to horses.

Assuming that the corral was atypical also does not change the result. The corral's configuration and composition were obvious and apparent. It was up to the farrier to assess the risks and safety of working with horses.

Finally, whether Leech had the ability to remove rocks from the corral is of no moment. The fact that the horses were in a corral with rocks was obvious. Nevertheless the farrier decided to assume the risks with the horses under these conditions.[4]

---

4    Based upon our holding that assumption of the risk bars Nancy's claims, we need not address Leech's contention that because Patrick was hired as an independent contractor he owed no duty to him.

14

DISPOSITION

The judgment is affirmed.  Leech shall recover his costs on appeal.


NARES, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.

15