[No. S126412. Aug. 28, 2006.]

MARTA PRIEBE, Plaintiff and Appellant, v.
RUSSELL NELSON, Defendant and Appellant.

**COUNSEL**

Law Offices of Ruel Walker, W. Ruel Walker; Janssen, Malloy, Needham, Morrison, Reinholtsen & Crowley, W. Timothy Needham and Michael Morrison for Plaintiff and Appellant.

Chapman, Popik & White, Susan M. Popik, Benjamin J. Riley; Mitchell, Brisso, Delaney & Vrieze and Nancy K. Delaney for Defendant and Appellant.

### OPINION

**BAXTER, J.**—Plaintiff Marta Priebe, a commercial kennel worker, brought this action against defendant Russell Nelson for personal injuries suffered when she was bitten and seriously injured by Nelson's dog while it was boarded at the kennel that employed her. Priebe appealed from the trial court's order denying her motion for judgment notwithstanding the defense verdict, arguing a directed verdict should have been entered in her favor on her strict liability claim brought under Civil Code section 3342 (section 3342), commonly referred to as the "dog bite statute." Section 3342 makes the owner of any dog "liable for the damages suffered by any person who is bitten by the dog . . . regardless of the former viciousness of the dog or the owner's knowledge of such viciousness." (§ 3342, subd. (a).)

Nelson countered that the so-called veterinarian's rule absolved him of any potential liability for injuries inflicted on Priebe by his dog while it was boarded at the kennel. Under that rule, which is a recognized application of the doctrine of primary assumption of risk, a dog owner who contracts with a veterinarian to treat his or her dog is generally exempt from liability should the dog bite or injure the veterinarian or veterinarian's assistant during such medical treatment. (See *Nelson v. Hall* (1985) 165 Cal.App.3d 709, 710 [211 Cal.Rptr. 668] (*Nelson*).)

The narrow question presented here is whether the veterinarian's rule should likewise bar a kennel worker's strict liability claim against a dog owner under section 3342 for injuries sustained from a dog bite or attack while the worker was caring for the owner's dog boarded at the kennel. The Court of Appeal concluded the doctrine should apply, finding Priebe assumed the risk of being bitten by dogs boarded at the kennel by virtue of the nature of her occupation as a kennel worker. We find the Court of Appeal's analysis sound and shall affirm its judgment.

Our holding with regard to the dog bite statute does not, however, mark the end of the road for plaintiff. A common law strict liability cause of action may also be maintained if the owner of a domestic animal that bites or injures another person knew or had reason to know of the animal's vicious propensities. (BAJI No. 6.66; see also Judicial Council of Cal. Civ. Jury Instns. (2003–2004) CACI No. 462.) If Nelson knew or should have known of his dog's vicious propensities and failed to inform Priebe of such facts, he could be found to have exposed Priebe to an *unknown risk* and thereby be held strictly liable at common law for her injuries. (See *Lipson v. Superior Court*

(1982) 31 Cal.3d 362, 371 [182 Cal.Rptr. 629, 644 P.2d 822] (*Lipson*); cf. *Nelson, supra,* 165 Cal.App.3d at p. 715, fn. 4.) Under such circumstances, the defense of primary assumption of risk would not bar Priebe's claim since she could not be found to have assumed a risk of which she was unaware. (*Ibid.*)

Whether Nelson knew or had reason to know his dog had vicious propensities, and if so, whether he adequately communicated that fact to Priebe or others at the kennel when the dog was surrendered for boarding, were matters sharply contested at trial. The Court of Appeal recognized the distinction between the elements of Priebe's statutory strict liability claim under section 3342, and her remaining common law claims, affirming the trial court's order granting her a new trial on those latter claims. Since that aspect of the Court of Appeal's holding has not been directly challenged on review, Priebe will be afforded an opportunity to pursue those common law claims on retrial.

### FACTS AND PROCEDURAL BACKGROUND

In the fall of 2000, defendant Russell Nelson was scheduled for out-of-town surgery and boarded "Mugsey," his 75-pound Staffordshire terrier, also known as a pit bull, at a kennel while he was away. Mugsey was "dog aggressive" and had gotten into fights with other dogs in the past. On one occasion a year earlier, Mugsey had also bitten Nelson and another dog owner moments after the two men pulled their dogs apart to avoid a fight. Nelson required several stitches in his hand as a result of the incident.

At least one kennel would not accept Mugsey for boarding when Nelson informed them the dog was hard to control around other dogs. Nelson then spoke with Peter Clusener, an acquaintance who worked at the Arcata Animal Hospital (Arcata), a small veterinary hospital with a kennel connected to the facility at which dogs are accepted for boarding even when no medical treatment is required. Clusener was familiar with Mugsey and knew him to be dog aggressive. He checked with the Arcata veterinarian staff and informed Nelson that Mugsey could be boarded there.

Nelson claimed he visited Arcata several times prior to boarding Mugsey at the facility out of concern over his dog-aggressive behavior. Nelson testified that during one such visit he told someone that Mugsey had once bitten him on the arm. On September 14, 2000, the day he dropped off Mugsey for boarding, he failed to mention that he had been bitten by the dog one year earlier. Marlena Folden, the receptionist who conducted the intake, did not recall Nelson mentioning either that Mugsey had once bitten him or that he was dog aggressive.

Dr. Oliphant, a veterinarian and owner of the facility, testified Priebe's training as a "kennel technician" would have included the basics of dog walking, including checking a boarded dog's kennel card to make sure there was no reason not to walk it, how to put a leash and collar on properly, how to greet the dog, and "to be careful of the other dogs and be aware of the dog that you're walking." Her duties included "caring for the patients and the boarders, feeding, walking, cleaning, laundry, helping hold animals, assisting the veterinarians and the technicians holding animals. We examine them, give vaccines . . . greeting clients, to bring animals back for vaccines when the technicians were doing booster vaccines . . . autoclaving [instrument sterilization], clean surgical packs, instruments, things like that. Lots of varied duties."

Dr. Oliphant had occasion to observe Mugsey in the kennel while he was boarded there and recalled that "[h]e always appeared friendly. He was a very outgoing, friendly dog." Prior to his attacking Priebe, Mugsey showed no signs of being "human aggressive." Dr. Oliphant was, however, aware that Mugsey was dog aggressive: "It was written on his record and on the cage pen." Mugsey's intake record also reflected that he had been administered 37 milligrams of apromocine, a sedative, on the day he was accepted for boarding, in likelihood due to his excitement and excessive barking. Dr. Oliphant testified there are some risks associated with walking dogs at the kennel. When asked whether being attacked or bitten by a dog while walking it is one such risk, Dr. Oliphant replied, "Well, sure. That's possible."

Dr. Oliphant testified further that when walking a dog-aggressive dog, "[t]here would be a danger that it might attack another dog." When asked if there was a risk that a person breaking up a dogfight could get bitten, she replied, "Oh, yes, definitely." When asked, "If after you talked with [your] receptionist someone had mentioned something that triggered her concern, you met with an owner, and the owner had told you that, for example, he got nipped on his arm when he was breaking up a dog fight, is that something that would have concerned you and kept you from keeping the dog?," Dr. Oliphant replied, "Not necessarily. It would depend on the dog and the owner and the circumstances, because breaking up a dogfight is a very risky thing to do, and it's common to get bit when you break up a dog fight." Dr. Oliphant testified she would not have accepted a dog for boarding who had attacked and bitten its owner after a dogfight because it would be "too much of a risk" for the staff. In such an instance, she would possibly refer the dog to the North Bank Kennel facility since "they have inside-outside runs, so they don't need to walk dogs; so we often refer aggressive dogs to them."

Priebe testified she had been working as a kennel worker or technician at Arcata for about four weeks when she met Nelson and Mugsey on September 14, 2000. They walked back to the kennels together. Nelson told Priebe that Mugsey needed to be walked with his metal-pronged pinch collar. He also told her that "if anyone hurt Mugsey[,] that he may hurt them, and that if someone kicked Mugsey, that he may bite them." Priebe assured Nelson that no one would hurt or kick his dog.

At some point Priebe became aware Mugsey was dog aggressive. She posted a note on his kennel card and the employee memo board warning of that fact. Priebe also raised the issue with Dr. Oliphant, who suggested she walk Mugsey before and after clients came in and out of the building, to minimize contact with other dogs. Priebe also received instructions from Clusener, her coworker who knew and had himself walked Mugsey, on how to use the pinch collar and harness setup to restrain the dog. Thereafter, Priebe walked Mugsey twice a day for two weeks without incident.

On the morning of September 28, 2000, while taking Mugsey for his morning walk, Priebe heard a dog barking in the back of a pickup truck in the parking lot. Mugsey began barking and becoming agitated. Priebe decided to turn around and return to the kennel. As she was doing so Mugsey grabbed her foot, knocking her down while mauling her foot and ankle. It took several onlookers to subdue the dog and get him to let go of Priebe's foot. Priebe was taken by ambulance to a local hospital. She suffered numerous bites to her foot and ankle as well as serious nerve injuries that required her to undergo physical therapy and will cause her pain for the rest of her life.

Priebe filed suit against Nelson in February 2001, asserting causes of action for statutory and common law strict liability, negligence, and tortious misrepresentation. Initially the trial court permitted Priebe to proceed on a theory of statutory strict liability pursuant to section 3342. At the close of evidence, however, the court reversed itself, concluding that given the nature of Priebe's occupation and employment as a kennel worker, she had, as a matter of law, assumed the risk of being bitten by dogs boarded at the kennel where she worked. Over Priebe's objection, the court denied her request for instructions on strict liability under section 3342, and refused her request for instructions on common law strict liability as well. (BAJI No. 6.66; CACI No. 462.) The case was submitted to the jury on a negligence theory of liability. The jury returned a verdict in favor of defendant Nelson.

Priebe moved for judgment notwithstanding the defense verdict on her statutory strict liability claim, which motion was denied. She also made a

motion for a new trial which the trial court granted, concluding that, "Plaintiff's counsel was unfairly required to try a case on one theory [statutory strict liability], which theory was then disallowed by the court at the close of evidence."

Nelson appealed from the trial court's order granting Priebe a new trial. Priebe in turn appealed from the order denying her motion for judgment notwithstanding the verdict on her statutory strict liability cause of action. She further argued the jury should have been instructed on common law strict liability in accordance with BAJI No. 6.66 (owning or keeping an animal with vicious propensities).

The Court of Appeal concluded the trial court did not abuse its discretion in granting Priebe a new trial, a holding from which Nelson did not seek review. The court went on to affirm the trial court's order denying Priebe's motion for judgment notwithstanding the verdict on her statutory strict liability claim, from which holding Priebe sought review.

The Court of Appeal reasoned that the strict liability dog bite statute (§ 3342) is inapplicable on these facts by virtue of the veterinarian's rule, an offshoot of the "fireman's rule," which rules are also sometimes collectively referred to as "occupational assumption of the risk." (See *Neighbarger v. Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 538 [34 Cal.Rptr.2d 630, 882 P.2d 347] (*Neighbarger*) [fireman's or firefighter's rule]; *Cohen v. McIntyre* (1993) 16 Cal.App.4th 650, 654–655 [20 Cal.Rptr.2d 143] (*Cohen*) [veterinarian's rule]; *Nelson, supra,* 165 Cal.App.3d at pp. 713–715 [veterinarian's rule applied to veterinary assistant].) The Court of Appeal concluded the veterinarian's rule should logically be extended to commercial kennel workers such as Priebe who, the court reasoned, regularly assume the risk of being bitten by dogs boarded at the kennels where they work as an inherent risk of their occupation.

The Court of Appeal went on to hold that Priebe was entitled to an instruction on common law strict liability on the theory that the owner of a domestic animal who knows or has reason to know of its vicious propensities is strictly liable for injuries caused by the animal. (BAJI No. 6.66; CACI No. 462.)

We granted Priebe's petition for review, limited to the question whether the doctrine of primary assumption of the risk, as embodied in the veterinarian's rule, bars the strict liability claim of a kennel worker under the dog bite statute.

DISCUSSION

In *Knight v. Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] (*Knight*), we explained that "[a]s a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. (See Civ. Code, § 1714.)" (*Id.* at p. 315; see also *Neighbarger, supra,* 8 Cal.4th at p. 538.) The question whether Nelson can be held liable in tort for the injuries inflicted on Priebe by his dog while it was boarded at the kennel and under her care is also primarily one of *duty.* In particular, we are concerned with Nelson's duty of care under the strict liability dog bite statute. Section 3342 provides, in pertinent part, "The owner of any dog is liable for the damages suffered by any person who is bitten by the dog while in a public place or lawfully in a private place, including the property of the owner of the dog, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness." (*Id.,* subd. (a).)

Subdivision (a) of section 3342 has been recognized as imposing a duty of care on every dog owner to prevent his or her dog from biting persons in a public place or lawfully in a private place. (*Davis v. Gaschler* (1992) 11 Cal.App.4th 1392, 1399 [14 Cal.Rptr.2d 679] (*Davis*).) Simply put, the statute is designed "to prevent dogs from becoming a hazard to the community" (*ibid.*) by holding dog owners to such a standard of care, and assigning strict liability for its breach.

Nelson contends that notwithstanding any duty of care imposed on him generally or specifically under the dog bite statute, because he relinquished custody and control of Mugsey to the Arcata kennel, and because dog bites are an inherent risk of work at a dog kennel, the doctrine of primary assumption of risk must be applied to bar Priebe's statutory strict liability claim.

The doctrine of assumption of risk, which is generally applicable in strict liability actions (*Lipson, supra,* 31 Cal.3d at p. 376; see *Daly v. General Motors Corp.* (1978) 20 Cal.3d 725, 733 [144 Cal.Rptr. 380, 575 P.2d 1162]), has long been recognized as a defense to a personal injury action brought pursuant to the dog bite statute (§ 3342) under appropriate facts. (See *Gomes v. Byrne* (1959) 51 Cal.2d 418, 420 [333 P.2d 754]; *Nelson, supra,* 165 Cal.App.3d at p. 713, and cases cited.)[1] A finding that the doctrine of primary

---

[1] In contrast, adoption of the literal construction the dissent would have this court place on section 3342 would require us to disapprove the veterinarian's rule announced in *Nelson, supra,* 165 Cal.App.3d 709, all the intermediate appellate court decisions that have followed *Nelson,* as well as this court's unanimous decision in *Neighbarger, supra,* 8 Cal.4th 532, in which we cited and discussed *Nelson* and its progeny and implicitly acknowledged the validity of extending the doctrine of assumption of risk, as embodied in the firefighter's rule, to

assumption of risk applies in any given factual context is, in essence, a determination, reached as a matter of law, that the defendant should be excused from the usual duty of care based on some clear, overriding statutory or public policy. (*Neighbarger, supra,* Cal.4th at p. 537; see *Rowland v. Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561].)

In *Knight, supra,* 3 Cal.4th 296, we characterized primary assumption of risk as "those instances in which the assumption of risk doctrine embodies a legal conclusion that there is 'no duty' on the part of the defendant to protect the plaintiff from a particular risk . . . ." (*Id.* at p. 308.) In primary assumption of risk cases, "the question whether the defendant owed a legal duty [of care] to protect the plaintiff from a particular risk of harm does not turn on the reasonableness or unreasonableness of the plaintiff's conduct, but rather on *the nature of the activity or sport in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity or sport.*" (*Id.* at p. 309, italics added.)

In *Knight,* the plaintiff brought an action for negligence and assault and battery for injuries she sustained when defendant knocked her over and stepped on her finger during an informal touch football game. The trial court granted summary judgment in favor of the defendant. We affirmed, observing that defendant did not breach a legal duty of care owed to plaintiff when he injured her while both were voluntarily participating in the game because "defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself." (*Knight, supra,* 3 Cal.4th at p. 315.) Plaintiff's action was therefore found barred under the doctrine of primary assumption of risk. (*Id.* at p. 321.)

The "venerable fireman's [or firefighter's] rule" is perhaps the most familiar example of the doctrine of primary assumption of risk. (*Walters v. Sloan* (1977) 20 Cal.3d 199, 202 [142 Cal.Rptr. 152, 571 P.2d 609] [applying rule to police officers injured in line of duty].) Although *Knight, supra,* 3 Cal.4th 296, involved the assumption of risks inherent in sports activities, we cited the firefighter's rule in that case as another example of a proper application of the doctrine, observing that, "In addition to the sports setting, the primary assumption of risk doctrine also comes into play in the category of cases often described as involving the 'firefighter's rule.' [Citation.] In its

California's strict liability dog bite statute. (*Neighbarger,* at pp. 544–546.) Indeed, under the dissent's rationale, this court would have to reach back and overrule our decision in *Gomes v. Byrne, supra,* 51 Cal.2d 418, in which we observed nearly 50 years ago that "In adopting section 3342 of the Civil Code, *the Legislature did not intend to render inapplicable such defenses as assumption of risk* or wilfully invited injury. Therefore those defenses are available in all proper cases. (See *Smythe* v. *Schacht,* 93 Cal.App.2d 315, 321 [209 P.2d 114], see also 2 Harper and James, The Law of Torts (1956) § 14.12, pp. 843–845.)" (*Gomes v. Byrne,* at p. 420, italics added.)

most classic form, the firefighter's rule involves the question whether a person who negligently has started a fire is liable for an injury sustained by a firefighter who is summoned to fight the fire; the rule provides that the person who started the fire is not liable under such circumstances. (See, e.g., *Walters* v. *Sloan* (1977) 20 Cal.3d 199, 202.) Although a number of theories have been cited to support this conclusion, the most persuasive explanation is that the party who negligently started the fire *had no legal duty to protect the firefighter from the very danger that the firefighter is employed to confront.* (See, e.g., *Baker* v. *Superior Court* (1982) 129 Cal.App.3d 710, 719–721 [181 Cal.Rptr. 311]; *Nelson* v. *Hall* (1985) 165 Cal.App.3d 709, 714 [211 Cal.Rptr. 668]. See generally 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 739, pp. 69–70 [discussing rule as one illustration of duty approach]; *Anicet* v. *Gant* (Fla.Dist.Ct.App. 1991) 580 So.2d 273, 276 ['a person specifically hired to encounter and combat particular dangers is owed no independent tort duty by those who have created those dangers . . . .'].) Because the defendant in such a case owes no duty to protect the firefighter from such risks, the firefighter has no cause of action even if the risk created by the fire was so great that a trier of fact could find it was unreasonable for the firefighter to choose to encounter the risk." (*Knight, supra,* 3 Cal.4th at p. 309, fn. 5, italics added.)

The veterinarian's rule, an offshoot of the firefighter's rule, has also been recognized in past decisions of this court as yet another application of the doctrine of primary assumption of risk. (*Neighbarger, supra,* 8 Cal.4th at pp. 544–546; *Knight, supra,* 3 Cal.4th at p. 309, fn. 5.) The rule, first announced in *Nelson, supra,* 165 Cal.App.3d 709, "has been held generally to exempt those who contract with veterinarians to treat their dogs from liability should the dog bite the veterinarian during treatment. (See *Cohen v. McIntyre* (1993) 16 Cal.App.4th 650 [20 Cal.Rptr.2d 143] [veterinarian]; *Willenberg v. Superior Court* (1986) 185 Cal.App.3d 185 [229 Cal.Rptr. 625] [same]; *Nelson v. Hall* (1985) 165 Cal.App.3d 709 [veterinary assistant].)" (*Neighbarger, supra,* 8 Cal.4th at pp. 544–545.)

In *Nelson, supra,* 165 Cal.App.3d 709, the plaintiff, a veterinary assistant, brought a strict liability action under the dog bite statute for injuries sustained when she was bitten while assisting a veterinarian in preparing a dog for minor surgery at the animal hospital where she worked. The dog was administered a sedative and lifted onto the treatment table. The plaintiff was standing alongside the table waiting for the sedative to take effect, her arms resting loosely on the dog. She was not restraining him, and he appeared calm. Without warning, he quickly turned and bit plaintiff in the face, causing severe injuries. The dog was known to the veterinary hospital staff as a dog that might attempt to bite while receiving medical treatment. On at least one prior occasion, he had attempted to bite his handlers, and a notation of

"careful" was written on his treatment card, although this fact was not communicated to the dog's owners. The hospital also had a practice of using muzzles on dogs that were known to be vicious, but no muzzle was used on this occasion. (*Id.* at pp. 711–712.) The defendants, who were not aware their dog had any vicious propensities, contended plaintiff assumed the risk of injury from dog bites, arguing that strict liability for their dog's actions under section 3342 "terminated when they delivered the dog to a qualified veterinarian and the veterinarian accepted employment." (*Nelson, supra,* 165 Cal.App.3d at p. 711.)

The plaintiff in *Nelson,* the court observed, was aware of the risks involved in treating dogs; indeed she herself had been bitten several times in the past. (*Nelson, supra,* 165 Cal.App.3d at p. 714.)[2] The veterinarian who employed the plaintiff testified that dog bites are an occupational hazard in the veterinary profession, and that it cannot be assumed a normally gentle dog will act gently while receiving medical treatment. The *Nelson* court concluded such a risk "logically extends to those who assist veterinarians in the treatment of dogs." (*Nelson, supra,* 165 Cal.App.3d at p. 714.) The court concluded further that, "The risk of dog bites during treatment is a specific known hazard endemic to the very occupation in which plaintiff voluntarily engaged. Therefore, in voluntarily engaging in the occupation of assisting veterinarians in the medical treatment of dogs, plaintiff assumed the risk of being bitten during the course of treatment." (*Ibid.*)

The *Nelson* court also addressed the question whether the dog's owners could assert primary assumption of risk as a *complete defense* to the plaintiff's statutory strict liability claim under section 3342. The court undertook a brief review of the principles underlying the firefighter's rule, and concluded, "The same principles apply here. A veterinarian or a veterinary assistant who accepts employment for the medical treatment of a dog, aware of the risk that *any* dog, regardless of its previous nature, might bite while being treated, has assumed this risk as part of his or her occupation.

---

[2] It should be noted *Nelson* was decided seven years before *Knight, supra,* 3 Cal.4th 296. If the veterinarian's rule announced in *Nelson* was understood today as being based "on the veterinarian's *subjective* acceptance of the foreseeable occupational hazard of dog bites," then it would be on "shaky ground" after this court's decision in *Knight, supra,* 3 Cal.4th 296. (*Neighbarger, supra,* 8 Cal.4th at p. 545, italics added.) Although the *Nelson* court reported several facts probative of the plaintiff's subjective appreciation of the risk of being bitten while she assisted in the medical treatment of the dog that bit her, we do not read the decision as placing principal reliance on those facts as the basis for the veterinarian's rule announced therein. As we subsequently explained in *Knight,* a plaintiff's subjective appreciation of the risks involved is no longer relevant to the question whether the defense of *primary assumption of risk* applies. *Knight* makes it clear that the inquiry is a legal and not a factual one and entails scrutiny of objective factors having to do with the nature of the activity engaged in by the defendant, and the relationship of the plaintiff and the defendant to that activity. (*Knight, supra,* 3 Cal.4th at p. 309.)

The veterinarian determines the method of treatment and handling of the dog. He or she is the person in possession and control of the dog and is in the best position to take necessary precautions and protective measures. The dog owner who has no knowledge of its particular vicious propensities has no control over what happens to the dog while being treated in a strange environment and cannot know how the dog will react to treatment. A dog owner who does no more than turn his or her dog over to a qualified veterinarian for medical treatment should not be held strictly liable when the dog bites a veterinarian or a veterinary assistant while being treated. [¶] Accordingly, we hold that assumption of the risk is a complete defense to an action by a veterinary assistant against a dog owner for damages for injuries suffered from being bitten by the owner's dog during the course of medical treatment." (*Nelson, supra,* 165 Cal.App.3d at p. 715, fn. omitted.)

Ever since *Nelson, supra,* 165 Cal.App.3d 709, was decided, the doctrine of primary assumption of risk as embodied in the veterinarian's rule has been applied in California to bar recovery in personal injury actions brought under the dog bite statute by veterinarians and their assistants who are bitten or injured while treating dogs under their care. For example, in *Cohen, supra,* 16 Cal.App.4th 650, the plaintiff, a county-employed veterinarian, was bitten several times by a dog brought into his clinic for a preneutering examination. The *Cohen* court concluded the case before it was "a classic situation where a defendant's ordinary duty of care is negated due to the nature of the activity and the relationship of the defendant to the plaintiff." (*Id.* at p. 655, fn. & italics omitted.) The court explained that, "Cohen, a licensed veterinarian, was injured during the course of treating an animal under his control, *an activity for which he was employed and compensated and one in which the risk of being attacked and bitten is well known.*" (*Ibid.,* italics added.)

Similarly, in *Willenberg v. Superior Court* (1986) 185 Cal.App.3d 185 [229 Cal.Rptr. 625] (*Willenberg*), decided one year after *Nelson, supra,* 165 Cal.App.3d 709, the court applied the veterinarian's rule to bar a personal injury claim by a veterinarian whose shoulder was injured when the dog he was about to examine suddenly leaped onto him from the examination table, forcing him to " 'wrestle her down.' " (*Willenberg,* at p. 186.) Quoting *Nelson* for the proposition that " '[I]t is generally accepted in the veterinary profession that any animal may react strangely or dangerously while receiving treatment, regardless of its behavior in the home environment,' " the *Willenberg* court found *Nelson* dispositive on the facts before it, explaining that, "The point of the *Nelson* case is that a visit to the veterinarian's office can bring about unpredictable behavior in a normally docile animal, and this is an inherent risk which every veterinarian assumes." (*Willenberg, supra,* 185 Cal.App.3d at pp. 186, 187, fn. omitted.)

The Court of Appeal below concluded the doctrine of primary assumption of risk, as embodied in the veterinarian's rule, must likewise be found to bar Priebe's strict liability claim under the dog bite statute by virtue of her occupation as a kennel worker. The court drew an analogy between veterinarians and their assistants, who routinely risk being bitten while treating dogs in the unfamiliar environment of their office or examination room, and kennel workers like Priebe, who likewise routinely risk being bitten by dogs under their care in the unfamiliar surroundings of a boarding kennel.

A number of cases support the Court of Appeal's conclusion. In two California decisions discussed by this court in connection with the veterinarian's rule in *Neighbarger, supra,* 8 Cal.4th 532, the courts were arguably predisposed to extending the bar to recovery of damages in suits brought by those other than veterinarians who also cared for or handled dogs in a professional or commercial capacity, were it not for the fact that no contract for the services to be rendered had been entered into before the plaintiffs' injuries were sustained, thereby precluding application of an assumption of risk defense. (*Davis, supra,* 11 Cal.App.4th at p. 1401 [veterinarian's rule inapplicable where dog owner had not contracted for services of plaintiff, an experienced dog breeder and handler]; *Prays v. Perryman* (1989) 213 Cal.App.3d 1133, 1137 [262 Cal.Rptr. 180] [veterinarian's rule inapplicable where commercial dog groomer had not yet formally accepted defendant's dog for grooming or entered into contractual grooming agreement]; see *Neighbarger, supra,* 8 Cal.4th at pp. 545–546.)

Two additional sister-state court decisions have placed principal reliance on the California Court of Appeal decision in *Nelson, supra,* 165 Cal.App.3d 709, concluding the rationale of *Nelson*'s veterinarian's rule barred personal injury actions under those states' respective strict liability dog bite statutes brought by individuals, other than veterinarians, who had contracted with dog owners to provide care or other services for their dogs.

In *Jordan v. Lusby* (Ky.Ct.App. 2002) 81 S.W.3d 523 (*Jordan*), the Kentucky Court of Appeal placed sole reliance on *Nelson, supra,* 16 Cal.App.3d 709, for its conclusion that a *dog groomer* who was bitten by a dog she had accepted for grooming assumed the risk of being bitten by the animal and was thus barred from suing the dog owner under Kentucky's strict liability dog bite statute. (*Jordan,* at pp. 524–525.) The *Jordan* court observed that, "The profession of dog grooming naturally entails a risk of being bitten by a client's dog, as do other professions involving the care of animals such as kennel owner or veterinarian. Common sense dictates that a person who grooms dogs must be deemed to be aware of the risks involved in dealing

with any dog, not just a dog of a particular breed. While, of course, it makes sense for a groomer to ask questions relating to a dog's propensity to bite for reasons of personal safety, it does not logically follow that a person who is in the business of grooming or otherwise caring for dogs does not assume the risk of being bitten by dogs." (*Jordan, supra,* 81 S.W.3d at pp. 524–525.)

Similarly, in *Reynolds v. Lancaster County Prison* (1999) 325 N.J. Super. 298 [739 A.2d 413] (*Reynolds*), the New Jersey court placed principal reliance on *Nelson, supra,* 16 Cal.App.3d 709, holding that the defense of primary assumption of risk, as embodied in *Nelson's* veterinarian's rule, barred recovery under New Jersey's strict liability dog bite statute by an *independent contractor* who had been attacked and seriously injured by a dog he agreed to care for in connection with his employment as manager of a guard dog company. In that case, one of the defendants, the Lancaster County prison, had given one of its dogs, a 134-pound Rottweiler trained as an attack dog for prison control, to another defendant, Guard Dogs Unlimited, a private guard dog service company. Although the dog had bitten prison employees on five separate occasions in the past, the prison failed to disclose this fact when it turned the dog over to the guard dog company. Within two months, the dog attacked and seriously injured the company manager, an independent contractor. At trial, the jury found the guard dog company liable for its manager's injuries under New Jersey's strict liability dog bite statute, which is nearly identical to California's dog bite statute (§ 3342).[3] The guard dog company appealed, arguing the plaintiff had agreed to care for the dog in his capacity as company manager, and had thereby assumed the risk of being bitten by the dog. (*Reynolds, supra,* 739 A.2d at pp. 417–418.) The court was thus "called upon to determine the duty of a dog owner to an independent contractor who is bitten while carrying out his contractual obligation to care for the dog on the owner's property." (*Id.* at p. 426.)

The *Reynolds* court quoted *Nelson, supra,* 16 Cal.App.3d 709, at some length and declared its analysis "sound." (*Reynolds, supra,* 739 A.2d at p. 427.) The court observed that, "In ordinary circumstances, when a dog is delivered for care to an independent contractor the owner is entitled to rely on the doctrine of primary assumption of the risk." (*Ibid.*) Although concluding the doctrine, as embodied in *Nelson's* veterinarian's rule, barred recovery of damages under New Jersey's strict liability dog bite statute, the court went on to affirm the plaintiff's judgment on an alternate theory of liability on which the judgment was also based—common law negligence—for failure to

---

[3] The New Jersey dog bite statute (N.J.Stat.Ann., § 4:19-16) provided, " 'The owner of any dog which shall bite a person while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of the dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.' " (*Reynolds, supra,* 739 A.2d at p. 426, fn. 4.)

adequately investigate and warn of the dog's history of viciousness under the "peculiar circumstances" of the case. (739 A.2d at p. 428.)

In two other sister-state decisions, the assumption of risk defense was specifically extended to bar recovery by a "kennel attendant" (*Lundy v. Stuhr* (1987) 185 Ga.App. 72 [363 S.E.2d 343, 344–346] [Georgia common law claim]), and a volunteer kennel worker (*Khamis v. Everson* (1993) 88 OhioApp.3d 220 [623 N.E.2d 683, 687] [Ohio statutory strict liability claim]), for injuries arising from a dog bite or attack sustained while performing various kennel duties. In *Khamis*, the Ohio appellate court explained that Ohio's strict liability dog bite statute was "intended to protect those *people who are not in a position to control the dog*." (*Ibid.*)[4]

In arguing that the doctrine of primary assumption of risk should not be applied as a bar to her statutory strict liability claim, Priebe urges us to focus on many of the facts peculiar to her case. It is undisputed that she was seriously injured as a result of Mugsey's attack. She asserts Nelson's dog was predisposed to become vicious and bite or attack people, pointing out that, unbeknownst to her, the dog had bitten Nelson and another individual in the past. She alleges Nelson failed to disclose this fact to her or anyone else at the kennel, suggesting she thus had no subjective appreciation of the risk she actually faced when caring for and walking this particular dog. She notes she had only been working at the kennel for approximately one month before the attack, and that although she received some general training as a kennel worker, and some specific advice from her colleague Clusener on how to harness, walk, and if need be, restrain Mugsey with his metal-pronged pinch collar, she received no special training on how to care for or manage a dog of his vicious and dangerous nature.

---

[4] Priebe points to several out-of-state decisions that have reached contrary conclusions. We find *Mulcahy v. Damron* (Ct.App. 1991) 169 Ariz. 11 [816 P.2d 270] inapposite. Although Arizona's strict liability dog bite statute is similar to California's dog bite statute, the *Mulcahy* court explained that the common law defense of assumption of risk has been superseded in Arizona and was not available as a defense in that case. (*Id.,* 816 P.2d at p. 272.) *Collins v. Kenealy* (Iowa 1992) 492 N.W.2d 679 is inapposite for the same reason. The Iowa Supreme Court explained in *Collins* that the Iowa Legislature had not recognized assumption of risk as a defense to Iowa's strict liability dog bite statute and the court was unwilling to do so on its own. (*Id.,* 492 N.W.2d at p. 682.) Finally, in *Hass v. Money* (1993) 1993 OKCIVAPP 38 [849 P.2d 1106], the Oklahoma Court of Civil Appeals reversed a summary judgment in favor of the owners of a dog that had bitten an employee of the animal clinic where it was boarded while being walked. (*Id.,* 849 P.2d at p. 1107.) Although *Hass* implicated the Oklahoma strict liability dog bite statute (Okla. Stat., tit. 4, § 42.1 (1991)), it is inapposite here as it also turned on the wording of a local Oklahoma City "vicious dog ordinance" as well as the availability of a "provocation" defense that had not been factually established in the case. (*Hass v. Money, supra,* 849 P.2d at pp. 1107–1108.)

Many of these facts, if established on retrial, could become relevant to Priebe's common law strict liability claim on the theory that Nelson knowingly harbored a vicious dog and failed to disclose that fact to her or other Arcata kennel personnel, thereby exposing them to an unknown risk of injury well beyond that normally associated with work at a dog kennel. As noted, the Court of Appeal held that, on retrial, Priebe will be entitled to pursue her common law strict liability claim (BAJI No. 6.66; CACI No. 462) denied her in the first trial, a ruling which has not been challenged on review.

The precise question here, however, and the only one on which Priebe sought review, is whether the Court of Appeal correctly concluded the doctrine of primary assumption of risk, as embodied in the veterinarian's rule, serves as a bar to her strict liability claim against Nelson under the dog bite statute. (§ 3342). As *Knight, supra,* 3 Cal.4th 296, teaches, this is a question of law turning largely on *objective* factors, such as the relationship between kennel workers and dog owners with respect to the activity of caring for and walking dogs boarded at a commercial kennel pursuant to a boarding agreement, and any policy reasons favoring or disfavoring recognition of assumption of risk as a complete defense to a statutory strict liability action brought by a kennel worker for injuries sustained while on the job.

We have already considered the legislative intent and purpose behind California's strict liability dog bite statute as it bears on the question whether assumption of risk should be recognized as a complete defense to a kennel worker's claim for damages under its provisions. Priebe argues section 3342 "represents a fundamental determination of legal policy by the California Legislature that the risk of a dog unexpectedly biting a person is to be borne by the person who has chosen to own that dog and thus create that risk for society, even when the owner is not at fault in any way and has no reason to know that the dog is vicious." We believe Priebe reads too much into the statute.

We have shown that subdivision (a) of section 3342 has been held to impose a duty of care on every dog owner to prevent his or her dog from biting persons in a public place or lawfully in a private place so as "to prevent dogs from becoming a hazard to the community." (*Davis, supra,* 11 Cal.App.4th at p. 1399.) We see nothing in the language of the statute to suggest the Legislature ever contemplated or intended that such a duty of care, and imposition of strict liability for its breach, should apply in those situations where the care, custody, and control of a dog has been entrusted to trained professionals in exchange for compensation, as is the case when a dog is left with a veterinarian for medical treatment, or placed in a licensed commercial kennel for boarding.

■ We agree with the observations of the Court of Appeal below, that "the business of kenneling is such that the kennel operators assume the care and handling of dogs entrusted to their professional care *during the absence of their owners*," and that "[o]nce a dog has been accepted for kenneling and the owner leaves, the kennel staff are in charge of the dog, not the owner. They determine the best way to handle the dog while at the kennel, and what protective measures, if any, should be taken to ensure employee safety." It seems counterintuitive to hold a dog owner strictly liable to a kennel worker for breach of the duty of care under section 3342 under circumstances where the dog owner has completely relinquished the care, custody, and control of his or her dog to a veterinarian or similar professional trained to care for and safely handle dogs, and the dog owner is therefore not in a position to supervise or prevent any conduct on the part of the dog.

Notwithstanding the general intent and purpose behind section 3342, we must also ask, is there is any clear public policy that would justify excusing the specific duty of care imposed on dog owners under the statute by extending the veterinarian's rule as a bar to personal injury suits by kennel workers injured on the job by dogs left in their exclusive care and control? The pertinent case law identifies several relevant public policies.

We have examined the California cases, starting with *Nelson, supra*, 165 Cal.App.3d 709, as well as its progeny, that have applied the veterinarian's rule in various factual settings. (E.g., *Cohen, supra*, 16 Cal.App.4th 650; *Willenberg, supra*, 185 Cal.App.3d 185; see *Neighbarger, supra*, 8 Cal.4th at pp. 544–546.) We have also examined several out-of-state decisions that have considered the rationale for the veterinarian's rule, including two decisions that placed express reliance on the *Nelson* decision in applying the rule in their states. (*Jordan, supra*, 81 S.W.3d 523 [Ky.]; *Reynolds, supra*, 739 A.2d 413 [N.J.].) And, as we have seen, several intermediate appellate court decisions, both within and outside of California, have already seen fit to extend the veterinarian's rule to veterinary assistants (*Nelson, supra*, 165 Cal.App.3d at p. 714); dog groomers (*Jordan, supra*, 81 S.W.3d at pp. 524–525); and in some instances, to kennel technicians or kennel workers (*Lundy v. Stuhr, supra*, 363 S.E.2d at pp. 344–346; *Khamis v. Everson, supra*, 623 N.E.2d at p. 687) who are bitten or otherwise injured by a dog left in their charge and care.

One rationale given in these cases for excusing the dog owner's usual duty of care under the veterinarian's rule lies in " 'the nature of the activity' " that characterizes the veterinary profession. (*Neighbarger, supra*, 8 Cal.4th at p. 545; *Cohen, supra*, 16 Cal.App.4th at p. 655.) As the *Nelson* court

explained, "The risk of dog bites during treatment is a specific known hazard endemic to the very occupation in which plaintiff voluntarily engaged. Therefore, in voluntarily engaging in the occupation of assisting veterinarians in the medical treatment of dogs, plaintiff assumed the risk of being bitten during the course of treatment." (*Nelson, supra*, 165 Cal.App.3d at p. 714.) The *Nelson* court observed further, "A veterinarian or a veterinary assistant who accepts employment for the medical treatment of a dog, aware of the risk that *any* dog, regardless of its previous nature, might bite while being treated, has assumed this risk as part of his or her occupation. The veterinarian determines the method of treatment and handling of the dog. He or she is the person in possession and control of the dog and is in the best position to take necessary precautions and protective measures." (*Id.* at p. 715.)

Hence, one public policy supportive of the veterinarian's rule is the commonsense recognition that veterinarians, their trained assistants, and those in similarly situated professions (e.g., dog groomers, kennel technicians) are in the best position, *and usually the only position*, to take the necessary safety precautions and protective measures to avoid being bitten or otherwise injured by a dog left in their care and control. We believe that same policy reason supports extension of the veterinarian's rule to kennel workers, such as Priebe, who are likewise trained to safely care for, walk, and handle dogs, and who are in the only position to look out for their own personal safety when working with dogs boarded at their kennels in the dog owners' absence. From a public policy standpoint, it makes little sense to hold a dog owner strictly liable for the routine risk of dog bite injuries suffered by such trained and paid professionals.

A second rationale given in the case law for excusing the dog owner's usual duty of care under the dog bite statute arises from the special nature of "the relationship between the defendant and the plaintiff." (*Neighbarger, supra*, 8 Cal.4th at p. 545; see *Cohen, supra*, 16 Cal.App.4th at p. 655.) It can be observed that in dog bite cases, unlike most other tort actions, the very instrumentality that causes the harm or injury to the plaintiff, i.e., the dog that bites or attacks, has oftentimes been physically separated from the custody and control of the supposed tortfeasor, i.e., the dog's legal owner, and relinquished to the care, custody, and control of the plaintiff, most often pursuant to a contractual agreement providing compensation for services such as medical care, grooming, or boarding. That state of affairs arguably leaves little if anything left to be done on the part of the dog owner to make good on his specific duty of care under section 3342, once custody and care of his dog is relinquished to the professional. As one court put it, "where a person accepts responsibility for controlling an animal, she cannot maintain a cause of action for injuries resulting from her own failure to control the animal." (*Wilcoxen v. Paige* (1988) 174 Ill.App.3d 541 [124 Ill.Dec. 213, 528 N.E.2d 1104].)

Hence, a second public policy supportive of the veterinarian's rule is the commonsense recognition that veterinarians, their trained assistants, and those in similarly situated professions (e.g., dog groomers, kennel technicians) enter into contractual relationships with dog owners and receive compensation for the services they provide, *which services, by their very nature and design, include the safe care and handling of dogs left in their charge.* Here again, we believe that same policy reason supports extension of the veterinarian's rule to kennel workers, such as Priebe, who are also trained to safely walk and handle dogs left for boarding under their exclusive care and control, and who are compensated pursuant to a contractual agreement for providing those very services.

There is yet a another policy reason for extending the veterinarian's rule to kennel workers such as Priebe, one perhaps best articulated by the Louisiana court in *Dubois v. Economy Fire & Cas. Co.* (La.Ct.App. 1998) 715 So.2d 131. In that case, a veterinary technician whose duties included "care of the kennel" was prevented from recovering for injuries suffered when a dog she was leading from a dog run by his collar bit her in the hand. (*Id.,* 715 So.2d at p. 132.) The Louisiana strict liability dog bite statute there at issue (La. Civ. Code, art. 2321) provided only that " 'The owner of an animal is answerable for the damage caused by the animal.' " (*Dubois v. Economy Fire & Cas. Co., supra,* 715 So.2d at p. 133, fn. omitted.) Applying the "risk-utility balancing test" applicable in Louisiana to determine whether the behavior of the dog "created or represented an unreasonable risk of harm to Plaintiff" (*ibid.*), the Louisiana Court of Appeal affirmed the judgment in favor of the dog's owners, concluding that "the likelihood of injury resulting from such dog-like behavior" and "the gravity of the harm threatened by the behavior" were outweighed by *"the utility of allowing dog owners to board their pets and have trained technicians care for the animal while the owner is out of town."* (*Ibid.,* italics added.)

Extending the veterinarian's rule as a bar to personal injury actions by kennel workers who are bitten or injured by a dog while on the job will therefore further serve the policy of encouraging dog owners to avail themselves of the services of licensed commercial dog kennels, without the threat of liability and lawsuits for injuries caused by their dogs' conduct hanging over their heads, conduct they are in no position to guard against or control once the dog is surrendered to the kennel for boarding. Encouraging the use of secure kennel boarding facilities in turn serves the salutory purpose behind the dog bite statute—that of protecting members of the public from harm or injury by dogs not properly under their owners' control and which they (the members of the public) themselves are in no position to control.

■ We therefore conclude that Priebe, by virtue of the nature of her occupation as a kennel worker, assumed the risk of being bitten or otherwise injured by the dogs under her care and control while in the custody of the commercial kennel where she worked pursuant to a contractual boarding agreement. The Court of Appeal correctly concluded a strict liability cause of action under the dog bite statute (§ 3342) was therefore unavailable to Priebe.

As we have noted, the factual matters of whether Nelson knew or had reason to know of Mugsey's vicious propensities, and whether he adequately warned Priebe or other Arcata staff members of the fact that his dog had bitten him and another individual in the past, were contested below. On retrial, Priebe will have the opportunity to again seek to establish facts supportive of her common law strict liability claim against Nelson for knowingly keeping a domestic animal with vicious propensities. (BAJI No. 6.66; CACI No. 462.)

CONCLUSION

The judgment of the Court of Appeal is affirmed, and the matter remanded to that court for further proceedings consistent with the views expressed herein.

George, C. J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

**KENNARD, J.,** Dissenting.—By enacting Civil Code section 3342, the Legislature has made a dog's owner liable "for the damages suffered by any person who is bitten by the dog while in a public place or lawfully in a private place, including the property of the owner of the dog, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness." (Civ. Code, § 3342, subd. (a).) The Legislature has established exceptions to this statutory liability: The owner is not liable for dog bite injuries inflicted under specified circumstances by dogs engaged in military or police work. (*Id.*, § 3342, subds. (b)–(d).)

Not satisfied with the exceptions that the Legislature has authorized, the majority here creates another. The majority holds that because plaintiff Marta Priebe worked at a kennel where the dog that savagely bit her was being boarded, the dog's owner is not liable under Civil Code section 3342 for the damages resulting from her dog bite injuries. The majority reaches this result by extending the so-called veterinarian's rule, itself an extension of the firefighter's rule, to judicially declare a nonstatutory exception to a statutory liability.

I disagree. Although this court has authority to establish the limits of common law tort liability, it has no similar authority to impose limits on, or create exceptions to, liabilities that the Legislature has mandated by statute. In construing a statute, a court's role is limited. A court "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ." (Code Civ. Proc., § 1858; see *People v. Leal* (2004) 33 Cal.4th 999, 1008 [16 Cal.Rptr.3d 869, 94 P.3d 1071] [recognizing that a court's task is to construe, not to amend, a statute].) By imposing its own limitation on a rule of liability that the Legislature has mandated, the majority usurps the Legislature's authority.

# I

In August 2000, Marta Priebe began employment as a kennel worker at the Arcata Animal Hospital. A few weeks later, on September 14, Russell Nelson boarded his dog, a 75-pound male pit bull named Mugsey, at the hospital's kennel. Mugsey was not sick or injured; he was not at the hospital for treatment. Mugsey was merely being boarded there while Nelson was out of town. Nelson requested that Mugsey be walked twice a day.

On the morning of September 28, Priebe began to walk Mugsey. A dog in the back of a pickup truck in the parking lot was barking, and Mugsey became agitated. Priebe decided to return to the kennel, and as she was doing so Mugsey grabbed her left ankle, knocking her down. When the dog was eventually pulled off her, she was taken by ambulance to a hospital for treatment of multiple bites to her foot and ankle resulting in serious nerve injuries that will cause her to be in pain for the rest of her life.

Priebe sued Nelson under Civil Code section 3342, also asserting claims for common law strict liability and negligence. After both parties had presented all their evidence at the trial, the court refused Priebe's request for jury instructions on liability under Civil Code section 3342 and on common law strict liability, allowing the case to go to the jury only on the negligence theory. In closing argument, Nelson's counsel exploited these last-minute developments, arguing that Priebe's counsel had improperly urged the jury to find Nelson strictly liable, and the jury returned a verdict for Nelson. Recognizing that it had treated Priebe unfairly, the trial court granted her motion for a new trial, but it denied her motion for judgment notwithstanding the verdict.

Both parties appealed. The Court of Appeal affirmed the order granting a new trial and denying judgment notwithstanding the verdict. It agreed with the trial court that Nelson could not be liable under Civil Code section 3342, but it ruled that on retrial Priebe could urge the theory of common law strict liability for owning a dog with known vicious propensities. This court granted review to determine whether California's doctrine of primary assumption of risk, as embodied in the firefighter's rule, applies to a claim for statutory strict liability under Civil Code section 3342.

## II

Under Civil Code section 3342, a dog's owner is liable for any damages suffered by a person whom the dog bites "regardless of the former viciousness of the dog or the owner's knowledge of such viciousness." The statute contains no exception for dog bite injuries suffered by kennel workers like Marta Priebe. Nothing indicates the Legislature intended such an exception when it enacted the statute.

The majority offers various justifications for its judicial amendment of Civil Code section 3342. None is persuasive.

First, the majority may be understood to argue that because assumption of the risk was a recognized defense to tort liability in 1931 when the Legislature enacted the uncodified predecessor of Civil Code section 3342 (Stats. 1931, ch. 503, § 1, pp. 1095–1096), and in 1953 when the Legislature codified that provision without substantial change as Civil Code section 3342 (Stats. 1953, ch. 37, § 6, pp. 675–676), this court may infer that the Legislature intended that the new statutory liability would be subject to that defense. (Maj. opn., *ante*, at pp. 1120–1121, citing *Gomes v. Byrne* (1959) 51 Cal.2d 418 [333 P.2d 754].) The defense of assumption of the risk that existed in 1931 and in 1953 is entirely different, however, from the doctrine of primary assumption of the risk as currently formulated and applied by this court. Assumption of the risk then was an affirmative defense requiring proof that the plaintiff voluntarily accepted a very specific risk with knowledge and appreciation of that risk. (*Prescott v. Ralphs Grocery Co.* (1954) 42 Cal.2d 158, 161 [265 P.2d 904]; see *Knight v. Jewett* (1992) 3 Cal.4th 296, 325–326 [11 Cal.Rptr.2d 2, 834 P.2d 696] (dis. opn. of Kennard, J.).) Thus, the defense "always depended upon the plaintiff's subjective mental state; the relevant inquiry [was] whether the plaintiff actually knew, appreciated, and voluntarily consented to assume a specific risk of injury." (*Knight v. Jewett, supra,* at p. 328 (dis. opn. of Kennard, J.), citing *Grey v. Fibreboard Paper Products Co.* (1966) 65 Cal.2d 240, 243–245 [53 Cal.Rptr. 545, 418 P.2d 153].)

In a series of decisions beginning with *Knight v. Jewett, supra,* 3 Cal.4th 296, this court abolished the affirmative defense of assumption of the risk, replacing it with the quite different doctrine of primary assumption of the risk, which does not turn on the plaintiff's subjective mental state, but instead imposes categorical limits on the defendant's duty of care. (See *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1022 [4 Cal.Rptr.3d 103, 75 P.3d 30] (dis. opn. of Kennard, J.); Esper & Keating, *Abusing "Duty"* (2006) 79 So.Cal. L.Rev. 265, 289–312.) Thus, the doctrine of primary assumption of risk is a limitation on the plaintiff's cause of action rather than an affirmative defense. There is no reason to infer that the Legislature, when it codified Civil Code section 3342 in 1953, intended that this strict statutory liability for dog bite injuries would be subject to the no-duty limitation of *primary* assumption of the risk, a doctrine that this court first recognized in 1992.

The majority asserts that my position would require this court to overrule its decision in *Gomes v. Byrne, supra,* 51 Cal.2d 418, which applied the traditional defense of assumption of risk to the statutory liability under Civil Code section 3342 (maj. opn., *ante,* at p. 1120, fn. 1). Not at all. *Gomes* is entirely consistent with my reading of Civil Code section 3342, because it is reasonable to assume that when it established a new statutory tort liability in 1931 by enacting the uncodified predecessor of Civil Code section 3342, the Legislature intended that the new statutory tort cause of action would be subject to affirmative defenses of general applicability, such as assumption of the risk. But the majority's doctrine of primary assumption of risk is neither an affirmative defense nor generally applicable. The majority permits primary assumption of risk to be asserted by a demurrer (see, e.g., *Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 153 [41 Cal.Rptr.3d 299, 131 P.3d 383]), thus demonstrating that it is not an affirmative defense but a limitation on the plaintiff's cause of action. That the doctrine is not one of general applicability is shown by the majority's decision here, which applies the doctrine *only* to plaintiff's statutory cause of action and not to plaintiff's closely related common law strict liability cause of action. (Maj. opn., *ante,* at p. 1132.)

The majority next appears to argue that even if the doctrine of primary assumption of the risk was not yet fully recognized and articulated in 1953 when the Legislature codified Civil Code section 3342, the firefighter's rule was then in existence, and this court may infer that the Legislature was aware of that rule. (Maj. opn., *ante,* at p. 1121.) But the firefighter's rule, under which a member of the public who negligently starts a fire is not held liable for injuries suffered by firefighters summoned to combat the fire, has no

application here. Marta Priebe, at the time of her injury, was a kennel worker, not a firefighter, and the justifications for the firefighter's rule do not apply to her employment.

As this court has explained, the firefighter's rule has four justifications. The first justification is that firefighters should not be permitted to sue on account of "the very negligence that makes their employment necessary." (*Neighbarger v. Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 540 [34 Cal.Rptr.2d 630, 882 P.2d 347].) Because most fires are negligently caused, and because firefighters are specially trained to deal with the risks of fire, it would seem unfair if firefighters could sue because of the very acts on which their livelihood depends. The same cannot be said of kennel workers and dog bites, however. Unlike some dog trainers, kennel workers are not specifically employed to deal with the risk of dog bites, and they typically receive little or no training on how to deal with that risk. If no dog ever bit anyone, there would still be a need for kennels and kennel workers.

The second justification for the firefighter's rule is that firefighters should not be permitted to sue someone who negligently starts a fire because they are already adequately compensated (with special salary, retirement, and disability benefits) for the particular risks involved in their hazardous occupation. (*Neighbarger v. Irwin Industries, Inc., supra,* 8 Cal.4th at p. 540, citing *Hubbard v. Boelt* (1980) 28 Cal.3d 480, 484 [169 Cal.Rptr. 706, 620 P.2d 156].) This cannot be said of kennel workers; there is no evidence before this court that kennel workers receive special compensation, including special retirement and disability benefits, for confronting the risk of injury from biting dogs.

The third justification for the firefighter's rule is that the public, having taxed itself to secure the services of the firefighter, should not have to pay twice, through taxation and through individual liability, for that service. (*Neighbarger v. Irwin Industries, Inc., supra,* 8 Cal.4th at pp. 542–543.) When defendant Nelson hired the animal hospital to board his dog, by contrast, he paid them to provide ordinary care for his dog, including food, shelter, and twice-daily walks. He did not pay the hospital primarily or specifically to confront a risk of being bitten by his dog. Indeed, Dr. Jeri Oliphant, the owner of the hospital, testified that she would not have accepted Nelson's dog for boarding if she had known of its history of biting humans. Thus, Nelson cannot argue that he is being required to pay twice, through boarding fees and through statutory tort liability, for the very same service.

The fourth and last justification for the firefighter's rule is that allowing firefighters to sue persons who negligently start fires could "embroil the courts in relatively pointless litigation over rights of indemnification among the employer, the retirement system, and the defendants' insurer." (*Neighbarger v. Irwin Industries, Inc., supra,* 8 Cal.4th at p. 540.) In *Neighbarger*, we concluded that this concern "to relieve various public agencies of the burden of lawsuits over rights of subrogation that are pointless because the public fisc ultimately pays regardless of the outcome does not apply in the case of private safety employees." (*Id.* at p. 543.) So also here, no public agency is involved, and so this justification does not apply to private kennel workers.

The majority next argues that even if the firefighter's rule does not apply of its own force, the veterinarian's rule, a variant or offshoot of the firefighter's rule, applies to dog bite injuries suffered by kennel workers. (Maj. opn., *ante,* at p. 1122.) In California, the veterinarian's rule traces its origin to *Nelson v. Hall* (1985) 165 Cal.App.3d 709 [211 Cal.Rptr. 668], a case decided more than 30 years *after* the Legislature codified Civil Code section 3342. Thus, the Legislature could not have intended that the liability established by Civil Code section 3342 would be subject to an implied exception under a rule that had not yet been recognized in this state. Moreover, the justifications for the veterinarian's rule, like the justifications for the firefighter's rule, are inapplicable to kennel workers like plaintiff Priebe.

The justification offered for the veterinarian's rule is that when a dog is undergoing treatment for illness or injury, the risk that the dog will bite the veterinarian or the veterinarian's assistant is "a specific known hazard endemic" to the veterinary profession (*Nelson v. Hall, supra,* 165 Cal.App.3d at p. 714) because "*any* dog, regardless of its previous nature, might bite while being treated" (*id.* at p. 715). Because this risk is endemic to the profession, veterinarians presumably receive special training on how to deal with it. Consistent with this justification, the rule extends only to "the danger the dog will bite *while being treated.*" (*Id.* at p. 715, fn. 4; see also *Neighbarger v. Irwin Industries, Inc., supra,* 8 Cal.4th at p. 545 [noting that dog owner has generally been exempted from liability when the dog bites the veterinarian "during treatment"].) The justification has no application to a kennel worker like Marta Priebe, who was hired to provide ordinary daily care for dogs not undergoing treatment, and who has never received special veterinary training.

The majority asserts that nothing in the language of Civil Code section 3342 suggests that the Legislature intended it to apply to dog bite injuries inflicted

on kennel workers by dogs under their care. (Maj. opn., *ante*, at p. 1128.) As this court has said repeatedly, however, a statute's words are the most reliable indicator of legislative intent (*People v. Toney* (2004) 32 Cal.4th 228, 232 [8 Cal.Rptr.3d 577, 82 P.3d 778]), and if the statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain meaning of the statute governs" (*People v. Robles* (2000) 23 Cal.4th 1106, 1111 [99 Cal.Rptr.2d 120, 5 P.3d 176]). The language of Civil Code section 3342 is unambiguous. Except for dogs engaged in military or police work, a dog's owner is liable "for the damages suffered by any person who is bitten by the dog while in a public place or lawfully in a private place, including the property of the owner of the dog, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness." (Civ. Code, § 3342, subd. (a).) Under the plain meaning of Civil Code section 3342, Russell Nelson is liable for the damages caused by Mugsey's attack on Marta Priebe.

As a final reason for extending the veterinarian's rule to kennel workers, the majority asserts that this new judicially created exception to statutory liability under Civil Code section 3342 will further three public policies. (Maj. opn., *ante*, at pp. 1129–1132.) This reasoning ignores constitutional limitations on judicial authority, because this court's views on public policy do not authorize it to amend statutes, or to decline to enforce them according to their plain meaning. (See *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 71 [78 Cal.Rptr.2d 16, 960 P.2d 1046] ["aside from constitutional policy, the Legislature, and not the courts, is vested with the responsibility to declare the public policy of the state"]; *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 53 [51 Cal.Rptr.2d 837, 913 P.2d 1046] ["The judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function"]; *City and County of San Francisco v. Sweet* (1995) 12 Cal.4th 105, 121 [48 Cal.Rptr.2d 42, 906 P.2d 1196] ["When the Legislature has spoken, the court is not free to substitute its judgment as to the better policy"].) In relying on public policy justifications, moreover, the majority ignores this court's previous warning, expressed in these words: "[I]t is generally agreed that 'public policy' as a concept is notoriously resistant to precise definition, and that courts should venture into this area, if at all, with care and due deference to the judgment of the legislative branch, 'lest they mistake their own predilections for public policy which deserves recognition at law.' [Citation.]" (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1095 [4 Cal.Rptr.2d 874, 824 P.2d 680]; accord, *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 185 [83 Cal.Rptr.2d 548, 973 P.2d 527].) To avoid such mistakes, this court has required that when public policy is used to justify a rule of tort liability, the decision must be "carefully tethered to fundamental

policies that are delineated in constitutional or statutory provisions." (*Gantt v. Sentry Insurance, supra,* at p. 1095.)

The public policies on which the majority relies are: (1) kennel workers are in the best position to avoid being bitten by dogs left in their care (maj. opn., *ante,* at pp. 1129–1130); (2) dog owners contract with and pay kennels to care for their dogs (*id.* at p. 1131); and (3) dog owners should be encouraged to use licensed dog kennels (*id.* at p. 1131). The first two are factual assertions or observations, not policies. Although encouraging dog owners to use licensed kennels could be a public policy, it is not one that the Legislature has chosen to adopt, much less one that the Legislature values more highly than the policies underlying Civil Code section 3342. Those policies, one may infer, are to provide compensation for the victims of dog bites, and to provide dog owners with a strong incentive to minimize the risk of dog bites by using care in the selection, breeding, socialization, and training of dogs. By relying on a policy that is not tethered to any constitutional or statutory provision, and by valuing that policy more highly than those embodied in the plain language of Civil Code section 3342, the majority arrogates to itself the Legislature's authority to set public policy.

## III

In construing statutory provisions, "a court is not authorized to insert qualifying provisions not included and may not rewrite the statute to conform to an assumed intention which does not appear from its language." (*People v. One 1940 Ford V-8 Coupe* (1950) 36 Cal.2d 471, 475 [224 P.2d 677]; accord, *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 578 [71 Cal.Rptr.2d 731, 950 P.2d 1086]; *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175]; *In re Hoddinott* (1996) 12 Cal.4th 992, 1002 [50 Cal.Rptr.2d 706, 911 P.2d 1381].) This sound principle, rooted in the constitutional doctrine of separation of powers, is all too often cast aside when this court enters the area of tort liability, as two legal commentators have recently noted: "Legislative judgments about reasonable care and conduct, traditionally given deference by courts in negligence cases, are now being disregarded in favor of the California appellate courts' own duty of care determinations. This is both a striking departure from established law and an improper encroachment on legislative authority and expertise." (Esper & Keating, *Abusing "Duty," supra,* 79 So.Cal. L.Rev. at p. 309.) This case illustrates that trend only too well. Relying on public policies of its own manufacture, the majority declines to enforce a statute as written, instead superimposing on an unambiguous statutory scheme a novel judicial exception.

Declining to join in this dubious legislative enterprise, I would hold that plaintiff Priebe has established her right under Civil Code section 3342 to compensation for the injuries she suffered, and that the trial court erred in denying her motion for judgment notwithstanding the verdict.